CITY OF COLUMBUS, APPELLEE, *v.* TEATER, DIRECTOR, DEPARTMENT OF NATURAL RESOURCES, APPELLANT.[1]
[Cite as Columbus v. Teater (1978), 53 Ohio St. 2d 253.]

(No. 77-540—Decided March 29, 1978.)

---

[1]This action was originally brought against the former Director of the Department of Natural Resources, William B. Nye.

254

*Mr. John L. Francis,* city attorney, *Mr. Robert A. Bell* and *Mr. Earl J. Silberman,* for appellee.

*Mr. William J. Brown,* attorney general, *Mr. Bruce E. Cryder* and *Mr. E. Dennis Muchnicki,* for appellant.

HERBERT, J. R. C. 1501.17 provides:

"No state department, agency, or political subdivision may build or enlarge any highway, road, or structure or modify or cause to modify the channel of any watercourse within a wild, scenic, or recreational river area outside the limits of a municipal corporation without having first obtained approval of the plans for such highway, road, or structure or channel modification from the director of natural resources. The common pleas court having jurisdiction shall, upon petition by the director, enjoin work on any highway, road, or structure or channel modification for which such approval has not been obtained."

The provisions of the Constitution of Ohio primarily concerned in this cause are:

Section 3 of Article XVIII:

"Municipalities shall have authority to exercise all powers of local self-government and to adopt and enforce within their limits such local police, sanitary and other similar regulations, as are not in conflict with general laws."

Section 4 of Article XVIII:

"Any municipality may acquire, construct, own, lease and operate within or without its corporate limits, any public utility the product or service of which is or is to be

supplied to the municipality or its inhabitants, and may contract with others for any such product or service. The acquisition of any such public utility may be by condemnation or otherwise, and a municipality may acquire thereby the use of, or full title to, the property and franchise of any company or person supplying to the municipality or its inhabitants the service or product of any such utility."

Section 5 of Article XVIII:

"Any municipality proceeding to acquire, construct, own, lease or operate a public utility, or to contract with any person or company therefor, shall act by ordinance and no such ordinance shall take effect until after thirty days from its passage. If within said thirty days a petition signed by ten per centum of the electors of the municipality shall be filed with the executive authority thereof demanding a referendum on such ordinance it shall not take effect until submitted to the electors and approved by a majority of those voting thereon. The submission of any such question shall be governed by all the provisions of section 8 of this article as to the submission of the question of choosing a charter commission."

Section 6 of Article XVIII:

"Any municipality, owning or operating a public utility for the purpose of supplying the service or product thereof to the municipality or its inhabitants, may also sell and deliver to others any transportation service of such utility and the surplus product of any other utility in an amount not exceeding in either case fifty percent of the total service or product supplied by such utility within the municipality, provided that such fifty percent limitation shall not apply to the sale of water or sewage services."

Section 7 of Article XVIII:

"Any municipality may frame and adopt or amend a charter for its government and may, subject to the provisions of section 3 of this article, exercise thereunder all powers of local self-government."

The main question to be decided in this appeal is whether R. C. 1501.17, on its face, necessarily violates any

or all of the foregoing constitutional provisions.

The police power[2] and the power of local self-govern-ment are constitutional grants of authority equal in dig-nity. The state may not restrict the exercise of self-govern-ment within a municipality. Furthermore, a municipality may exercise the police power within its borders. How-ever, the general laws of the state remain supreme in the exercise of that power, even if the issue is one which might also be a proper subject of municipal legislation. *Canton* v. *Whitman* (1975), 44 Ohio St. 2d 62, 66, 337 N. E. 2d 766, appeal dismissed, 425 U. S. 956 (1976).

In contending that the preservation of certain of the state's rivers is a valid exercise of state police power, ap-pellant relies upon Section 36 of Article II of the Con-stitution of Ohio, which provides: "Laws may * * * be passed * * * to provide for the conservation of the natural resources of the state, including streams * * *."

Appellee argues that since a city's authority to acquire a municipal public utility is derived directly from Article XVIII, the General Assembly may in no way restrict the exercise of such power. Appellee relies upon *State, ex rel. McCann,* v. *Defiance* (1958), 167 Ohio St. 313, 148 N. E. 2d 221; and *Swank* v. *Shiloh* (1957), 166 Ohio St. 415, 143 N. E. 2d 586.

In *McCann*, the relator had instituted an original man-damus action in the appellate court to compel the city of Defiance to issue a permit to tap into a water line, and to

---

[2]The police power is not subject to definite limitations, but is coex-tensive with the safeguards of public interest. It encompasses regula-tions designed to promote public convenience or the general prosperity or welfare. *Akron* v. *Pub. Util. Comm.* (1948), 149 Ohio St. 347, 358-59, 78 N. E. 2d 890, quoting *Sligh* v. *Kirkwood* (1915), 237 U. S. 52, 59.

"* * * [T]he courts have invariably refused to define the police power." *State, ex rel. Arey,* v. *Sherrill* (1944), 142 Ohio St. 574, 587, 53 N. E. 2d 501 (Williams, J., concurring).

"The term police power, although generally understood and uni-versally recognized, is somewhat hazy and ambiguous and not subject to precise or even accurate definition." *Cincinnati* v. *Correll* (1943), 141 Ohio St. 535, 538, 49 N. E. 2d 412.

force the city to furnish water service to the relator's premises from the municipal water works system at a rate not in excess of that permitted by R. C. 743.13.[a] The appellate court determined that were R. C. 743.13 constitutional, the relator would have been entitled to her relief, but that R. C. 743.13 was unconstitutional as conflicting with Section 4 of Article XVIII. This court affirmed the appellate court judgment.

A passage in *McCann*, at pages 316-17, explained:

"The opinions and syllabi in some of the cases * * * have language in them tending to indicate that the General Assembly *may merely regulate* though not restrict or limit * * * municipal power. However, every regulation limits or restricts something. Hence, if a so-called mere statutory regulation of the General Assembly limits or restricts a power conferred by Sections 4 or 6 of Article XVIII of the Constitution, it can be no more effective than any other statutory limitation or restriction of such a power."

But in holding that the General Assembly enjoys no power to enact any statute restricting by regulation the power of a municipality to operate a public utility and to deliver to others the portion of the surplus product of the utility that is authorized by Sections 4 and 6 of Article XVIII, *McCann* expressly recognized the retention by the state of its police power.[4] Immediately following the fore-

---

[a]R. C. 743.13 provides:

"When any person at his own expense has laid down and extended mains and waterpipes or electric light and power lines beyond the limits of a municipal corporation, and the legislative authority thereof, by resolution, has authorized the proper officer of the water works to superintend or supervise such laying and extension, the municipal corporation shall furnish water or electricity to the residents and property holders on the line of such facilities. The same rules and regulations which govern the furnishing of water or electricity to its own citizens shall apply in such cases, except that the rates charged therefor shall not exceed those within the municipal corporation by more than one tenth."

[4]Further evidence that appellee misapprehends *McCann* is found in the syllabus of that case. The language is carefully chosen and the holding is limited to the facts then before the court.

going passage, *McCann* cites approvingly *Akron* v. *Pub. Util. Comm.* (1948), 149 Ohio St. 347, 78 N. E. 2d 890, wherein this court had held that the commission had authority to restrict and regulate a gas company's supplying of natural gas: "In doing so, this court recognized the Public Utilities Commission order as an exercise by the state of its *general police power.*" *McCann, supra,* at page 317.

In *Whitman, supra* (44 Ohio St. 2d 62), at page 67, this court cited *McCann* for the propositions that Section 4 rights derive directly from the people through the Constitution, and that the General Assembly may not impose restrictions upon a municipality's power to operate a public utility. However, immediately following that observation, *McCann* was cited again to demonstrate the considerable power remaining in the hands of the General Assembly: "It may * * * enact legislation under its general police power to protect the public health and safety." *Whitman, supra,* at page 68.

*McCann* is distinguishable from the case at bar. We likewise do not find *Swank*, which analyzed local authority relative to utilities in language less inclusive than that quoted above from *McCann*, to be compelling authority for the position taken by appellee.

Is the instant appellant's effort at river preservation, instituted pursuant to a law enacted under authority of Section 36 of Article II, such an exercise of police power that, even in the perspective of Article XVIII, the state authority *could* prevail? We conclude that it is.

Enlightening in this regard are the debates of the Constitutional Convention of 1912. The thinking revealed therein is strikingly relevant to the widespread environmental and ecological concerns of the 1970's. In the course of those proceedings, Mr. Miller of Fairfield County explained, relative to Section 36 of Article II:

"* * * [I]n this day, when conservation congresses are being held at the call of the President and with the assistance of the governors, and when it is considered that this

proposal reaches to all corners of the state of Ohio and appeals to every man who builds a home and to every man who burns electric lights or who has to supply food in the future, no argument is needed to convince them of the necessity of adopting this proposal. We have no right to waste our natural resources and thereby deprive the people of the future of that which belongs to them." 2 Proceedings and Debates of the Constitutional Convention of the State of Ohio (1912), at page 1837.

Furthermore, various Constitutional Convention pronouncements concerning Article XVIII demonstrate that the Home Rule Amendment leaves municipal authorities subordinate to the state police power in matters of state-wide import.[5]

---

[5]The following are remarks of Mr. Knight during the debates:

"The proposal does not undertake * * * to detach cities from the state, but it does undertake to draw as sharply and as clearly as possible the line that separates general state affairs from the business which is peculiar to each separate municipality * * * and to leave the control of the state as large and broad and comprehensive in the future as it has been in the past with reference to those things which concern us all in the state of Ohio * * * and, * * * to confer upon the cities for the benefit of those who live in the cities control over those things peculiar to the cities and which concern the cities as distinct from the rural communities. I repeat, to draw as sharply and as definitely as possible, a line between those two things and to leave the power of the state as broad hereafter with reference to general affairs as it has ever been * * *." 2 Proceedings and Debates of the Constitutional Convention of the State of Ohio (1912), at page 1433.

"It [Section 3 of Article XVIII] is not intended to invade state authority in the least, but to make clear that the municipality has the right to enact such local police, sanitary and other similar regulations as are not in conflict with general laws. It can not take away, however." *Id.*, at page 1439.

"You [through Section 3 of Article XVIII] give it [a city] supplementary power to meet local conditions. You do not lessen the [General Assembly's police] power." *Id.*, at page 1440.

"It [Section 3 of Article XVIII] does not subtract a particle from the police power of the state * * *." *Id.*

"We do not put them [municipalities and the state] on a parity, because any time the general assembly of the state sees fit to enact a new regulation under the police power making it more stringent than

The authority enjoyed by municipalities under Article XVIII cannot be extinguished by the General Assembly. Nevertheless, under appropriate facts, the power possessed by the General Assembly under Section 36 of Article II can override the interest of a city in constructing water supply impoundments located outside its corporate limits. Ultimately, the judiciary must determine the facts in such controversies, balance the rights of the state against those of the municipality and endeavor to protect the respective interests of each. In such instances, the outcome of the constitutional argument involved will depend upon the facts and circumstances of the case.[6] Therefore, we conclude that R. C. 1501.17 is not facially violative of Sections 3, 4, 5, 6, or 7 of Article XVIII of the Constitution of Ohio.

Appellee also submits that inasmuch as R. C. 1501.17 provides that the common pleas court having jurisdiction "shall," upon petition by the director, enjoin work, it constitutes an offensive invasion of the constitutional authority of the judiciary. Appellee relies upon Section 16 of

under the municipal government, then to that extent the state provision immediately supersedes the municipal ordinance. The ultimate authority is in the hands of the state * * *." *Id.*, at page 1441.

"* * * [T]he great police power, and the great powers of education and of health, all are held with a firm hand by the state." *Id.*, at page 1456 (remarks of Mr. Harris).

Only. six years thereafter, this court looked to the above passage from the remarks of Mr. Harris, chairman of the committee that drafted and presented Article XVIII to the Convention, in pointing out that "it is difficult to understand how it can now be claimed that the constitutional convention intended to confer unrestricted police power upon the municipalities of this state, or that the electors of Ohio so understood this amendment when it was adopted as a part of the state constitution." *Cleveland Telephone Co.* v. *Cleveland* (1918), 98 Ohio St. 358, 368, 121 N. E. 701.

[6]For example, by virtue of the posture of this cause, there is not yet a formal record from which to ascertain whether the city of Columbus has reasonably alternative potential sources of water, nor evidence upon which to rely concerning the statewide environmental significance, if any, of the Big Darby Creek region.

Article I,[7] and on Sections 1 and 4 of Article IV[8] of the Constitution of Ohio.

Appellee is correct in that R. C. 1501.17 cannot require a court to issue any order. However, we agree with the Court of Appeals that the broad reading of the statute proposed by appellee is unnecessary. Additionally, we deem this portion of the statute to be severable, but see no significant purpose to be served in striking it down. Hence, in keeping with the judicial policy of preserving legislative enactments where possible, we construe this language as being only permissive insofar as it attempts to control an exercise of the judicial function.

In view of the foregoing, the judgment of the Court of Appeals is reversed.

*Judgment reversed.*

O'NEILL, C. J., CELEBREZZE, W. BROWN, P. BROWN, SWEENEY and LOCHER, JJ., concur.

---

[7]Section 16 of Article I of the Constitution of Ohio provides, in relevant part:

"All courts shall be open, and every person, for an injury done him in his land, goods, person, or reputation, shall have remedy by due course of law, and shall have justice administered without denial or delay."

[8]Section 1 of Article IV of the Constitution of Ohio provides:

"The judicial power of the state is vested in a supreme court, courts of appeals, courts of common pleas and divisions thereof, and such other courts inferior to the Supreme Court as may from time to time be established by law."

Section 4 of Article IV of the Constitution of Ohio provides, in relevant part:

"(A) There shall be a court of common pleas and such divisions thereof as may be established by law serving each county of the state. * * *

"(B) The courts of common pleas and divisions thereof shall have original jurisdiction over all justiciable matters and such powers of review of proceedings of administrative officers and agencies as may be provided by law."