## BOARD OF COMMISSIONERS OF OTTAWA COUNTY, Appellee,

### v.

## VILLAGE OF MARBLEHEAD, OHIO, et al. Appellants.

[Cite as *Ottawa Cty. Bd. of Commrs. v. Marblehead* (1995), 102 Ohio App.3d 306.]

Court of Appeals of Ohio,
Sixth District, Ottawa County.

No. OT–94–050.

Decided March 31, 1995.

*Lowell S. Petersen,* Ottawa County Prosecuting Attorney; *Benesch, Friedlander, Coplan & Aronoff, Orla E. Collier III, Mark D. Tucker* and *Rex A. Littrell,* for appellee.

*Joseph A. Brunetto* and *John B. Albers II,* for appellants village of Marblehead and Kathleen K. Dziak.

*Robert M. Moore,* for intervening taxpayer appellants.

---

SHERCK, Judge.

This is a consolidated appeal from judgments issued by the Ottawa County Court of Common Pleas. The common pleas court granted summary judgment to the Ottawa County Commissioners, who were involved in a dispute with the village of Marblehead over Marblehead's right to supply water to county residents who live outside the village. Because the trial court properly granted summary judgment as to the limits imposed on the village's authority and properly denied a taxpayers' motion to intervene, we affirm that part of the judgment. However, because the trial court improperly granted a permanent injunction preventing the village from selling bonds and notes, we reverse that part of the judgment.

On May 26, 1994, appellee, the Board of Commissioners of Ottawa County, filed a declaratory action seeking a permanent injunction against appellants, the village of Marblehead, Ohio, and Kathleen K. Dziak, in her official capacity as mayor of the village. Appellants timely filed an answer and counterclaims.

Appellee sought to enjoin appellants from expanding water facilities beyond the village boundaries into an area in Danbury Township, Ottawa County ("Sewer District No. 7"). Prior to this action, appellants had supplied water to the sewer district pursuant to a contract with appellee. When this contract expired in 1991, appellants proposed to develop plans to enlarge their water supply facilities to accommodate the requests of additional residents of the sewer district who lived outside the village. Appellee objected to appellants' proposed plans for enlargement, declaring that appellee had already expended funds and developed plans to implement a regional water supply system. Appellee further contended that it had exclusive authority to approve the construction of water systems in unincorporated areas of the county.

Both appellee and appellants filed motions for summary judgment and replies in opposition. On July 29, 1994, nine area businesses[1] located in Danbury

---

1. The following businesses were listed as Danbury Township taxpayers on the original motion: Steinbrick East Harbor Builder's Supply, Inc.; Elaine Steinbrick, d.b.a. Harbor Haven Trailer

Township, designating themselves as "Defendant Taxpayers,"[2] moved to intervene, seeking leave to file a memorandum in opposition to appellee's motion for summary judgment. The trial court heard oral arguments on the motions for summary judgment on August 4, 1994. On August 10, 1994, the Board of Danbury Township Trustees sought leave to file an *amicus curiae* brief *instanter*.

By judgment entries dated August 25, 1994 and September 16, 1994, the trial court denied appellants' motion for summary judgment and granted summary judgment to appellee. The court also denied the Danbury Township Trustees' motion to file an *amicus curiae* brief and the defendant taxpayers' motion to intervene. The court declared that Marblehead had no constitutional right to extend water services into Sewer District No. 7. The court also declared that property owners in that district must petition for water service from the board, which has the exclusive authority to provide water service. Finally, the trial court found that Marblehead had no authority to issue bonds or notes for the purpose of extending water service outside its municipal boundaries. The trial court then granted appellee's request for a permanent injunction enjoining the village of Marblehead from "any further act or conduct inconsistent with the declaratory judgment relief set forth" in the judgment entry.

Appellants, the village of Marblehead and Mayor Dziak, appeal this judgment, setting forth the following five assignments of error:

"FIRST ASSIGNMENT OF ERROR:

"The trial court erred in declaring that a municipality has no constitutional right to provide water service to residents of a sewer district outside its boundaries.

"SECOND ASSIGNMENT OF ERROR:

"The trial court erred in holding that R.C. § 743.12 does not authorize Marblehead to extend its water supply works into Danbury township.

"THIRD ASSIGNMENT OF ERROR:

"The trial court erred in holding that Chapter 6103 of the Ohio Revised Code confers paramount rights, duties and obligations on a county to operate a water works system within a sewer district.

---

Park Marina; Hubert Keating, d.b.a. Blue Water Marina; Channel Grove Marina; Limbert Marina, d.b.a. Marblehead Harbor; Lakevue Marine, Inc.; Alkop, Inc.; Marine City, Inc.; and Peninsula Motel and Trailer Park. On August 18, 1994, Anchor's Away Marina Corp. and Marina Del Isle were substituted for Steinbrick East Harbor Builder's Supply, Inc. and Elaine Steinbrick, d.b.a. Harbor Haven Trailer Park Marina. On August 22, 1994, Buck Point Limited Partnership/West Harbor Marina, Inc. also joined the action as a defendant taxpayer.

2. For purposes of clarity in our later discussions, we designate these parties as the taxpayer appellants.

"FOURTH ASSIGNMENT OF ERROR:

"The trial court erred in refusing to find that the authority of county commissioners to approve plans and specifications for water works under R.C. § 6103.02(A) has been preempted by R.C. Chapter 6109.

"FIFTH ASSIGNMENT OF ERROR:

"The trial court had no jurisdiction to enjoin Marblehead from spending its funds for the preparation of engineering plans and specifications, and the plaintiff county commissioners had no standing to request such relief."

In a separate appeal, appellants, defendant taxpayers, also appealed the denial of their motion to intervene, setting forth the following sole assignment of error:

"The trial court committed reversible error when it denied the appellant-taxpayers' motion to intervene."

This court consolidated the two appeals upon motion of the parties.

I

We will first address the appeal of Marblehead and Mayor Dziak, discussing appellants' first three assignments of error together, since these assignments all pertain to the grant of summary judgment as to the respective authorities of the parties to supply water to Sewer District No. 7.

Appellants argue that the trial court erred in ruling that a municipality has no constitutional or statutory rights to provide water service to residents outside the village boundaries. Appellants further contend that R.C. 743.12 authorizes the village to supply water to nonresidents and that R.C. 6103.01 *et seq.* does not confer paramount rights, duties and obligations on a county to provide water service to an unincorporated township.

█ Summary judgment pursuant to Civ.R. 56 shall be granted if (1) no genuine issue of material fact remains to be litigated, (2) the moving party is entitled to judgment as a matter of law, and (3) the evidence demonstrates that reasonable minds can come to but one conclusion, and that conclusion is adverse to the party opposing the motion. *Davis v. Loopco Indus., Inc.* (1993), 66 Ohio St.3d 64, 609 N.E.2d 144.

█ The material facts of this case are not in dispute. Appellants essentially argue that summary judgment was improperly granted to appellee because appellee was not entitled to judgment as a matter of law. To determine the

propriety of the trial court's ruling, we must look to the sources of the powers and authority granted to villages [3] and counties.

It is well established that a municipality's powers, rights and privileges are derived from the people, pursuant to the provisions of Sections 4 and 6 of Article XVIII of the Constitution, and not from the General Assembly. The General Assembly has no power to limit or restrict, by regulation or otherwise, the power and authority of a municipality to operate a public utility for the purpose of supplying the product thereof to such municipality or its inhabitants, or selling and delivering to others some of the surplus product thereof, pursuant to the provisions of Sections 4 and 6 of Article XVIII. *State ex rel McCann v. Defiance* (1958), 167 Ohio St. 313, 4 O.O.2d 369, 148 N.E.2d 221, paragraph one of the syllabus; *Fairway Manor v. Summit Cty. Commrs.* (1988), 36 Ohio St.3d 85, 86, 521 N.E.2d 818, 820.

■ The Supreme Court of Ohio has held that, pursuant to R.C. 6117.01, the county's power to regulate sewer districts in the interest of public health and welfare constitutes a valid exercise of state police power. *Delaware Cty. Bd. of Commrs. v. Columbus* (1986), 26 Ohio St.3d 179, 180–181, 26 OBR 154, 154–156, 497 N.E.2d 1112, 1113–1114. In that case, the court determined that the "authority enjoyed by the city to construct sewer lines outside its corporate limits and the regulating authority of the county are of equal dignity." *Id.* at 181, 26 OBR at 155, 497 N.E.2d at 1114. Citing its earlier decision of *Columbus v. Teater* (1978), 53 Ohio St.2d 253, 7 O.O.3d 410, 374 N.E.2d 154, the court applied a balancing test which weighed the rights of the county against the rights of the municipality while attempting to preserve the interests of each. *Id.* As a result, the outcome of cases dealing with the authority of municipalities to supply public utility service to nonresidents versus county authority will depend on the facts of each case. *Id.*

In the present case, although acknowledging the equal powers of the parties, the trial court ruled that "Marblehead has no constitutional grant of authority to exercise public utility rights within Sewer District No. 7." The trial court also concluded that the county had paramount rights to those of Marblehead, by virtue of its police power under R.C. 6103.01 *et seq.*, implying that a municipality's authority is always subordinate to that of a county.

However, based on the Supreme Court test enunciated in *Columbus v. Teater, supra,* this determination of the trial court is flawed. Since each case must be decided on its own set of facts, the county's authority may not always be paramount to the constitutionally granted rights of a municipality. Under facts

---

**3.** Villages are classified as municipalities. Section 1, Article XVIII, Ohio Constitution; R.C. 703.01.

different from the present case, a municipality's authority to sell water to nonresidents could outweigh the county's police power to intervene. See *Delaware Cty. Bd. of Commrs. v. Columbus, supra.* Therefore, we conclude that the trial court erred in declaring that Marblehead had no constitutional right to supply water to the area outside its boundaries. Notwithstanding this error, we cannot conclude that the trial court, in this case, erred in ruling that appellee has paramount authority over appellants, pursuant to its police power granted by R.C. 6103.01 *et seq.*

Our complete review of the record, in the present case, shows that there are no genuine issues of material fact. Appellee has already expended substantial funding to develop a "Master Plan" for an Ottawa County Regional Water System which will serve and benefit a substantial portion of the county; appellee, six townships (including Danbury Township), Port Clinton, and Oak Harbor have executed an agreement to implement the plan. Additionally, the plan has also been approved by the Ohio Environmental Protection Agency ("Ohio EPA"), as required by statute. Therefore, after applying the balancing test of *Columbus v. Teater* to the facts of this case, we conclude that appellee's authority to exercise its police power to provide safe water to the county residents outweighs appellants' constitutional authority to sell surplus water outside the village, and the trial court properly found, as a matter of law, that Ottawa County's rights are paramount over Marblehead's rights.

Furthermore, although R.C. 743.12 permits a municipality to extend water service to nonresidents upon their requests, based upon our discussion above we conclude that this statute does not grant exclusive rights to the municipality to provide water service. Likewise, as we have already noted, R.C. Chapter 6103 does not automatically grant exclusive authority to the county, pursuant to its police power, to provide utility services to areas outside municipalities. Since the balancing test of *Columbus v. Teater* is the applicable law, neither of these statutory sections is determinative of the issues presented.

Therefore, as to appellee's right to prevent appellants' extension and construction of its water supply system into Sewer District No. 7, we conclude that no genuine issue of material fact remains, that appellee is entitled to judgment as a matter of law, and that reasonable minds would come to but one conclusion, which is adverse to appellants. Therefore, summary judgment was properly granted to appellee as to this issue.

Accordingly, appellants' first, second and third assignments of error are not well taken.

## II

■ Appellants, in their fourth assignment of error, argue that R.C. 6109.01 *et seq.* has preempted the authority of county commissioners to approve plans and specifications for water works granted under R.C. 6103.02(A).

R.C. 6109.03 states that the purpose of this chapter is to "protect the public health and welfare and to enable the state to assume and retain primary enforcement responsibility under the Safe Drinking Water Act." Additionally, R.C. 6109.07(A) stated:

"No person shall begin construction or installation of a public water system, or make a substantial change in a public water system, until plans therefor have been approved by the director of environmental protection. Upon receipt of a proper application, the director shall consider the need for compliance with requirements of the Safe Drinking Water Act, and generally accepted standards for the construction and equipping of water systems, and shall issue an order approving or disapproving such plans. * * * " 137 Ohio Laws, Part I, 1259, 1265–1266.

■ We have thoroughly reviewed R.C. Chapter 6109, which governs the Ohio EPA regulations of the quality, safety, and construction of water supply systems. We note that R.C. Chapter 6109 requires approval of construction plans by the Ohio EPA prior to building waterworks; thus, the chapter preempts other statutory sections permitting other political subdivisions to exclusively approve such plans. However, R.C. Chapter 6109 does not address the issue of exclusive authority for the providing of water service over a specific area of a county. Therefore, we conclude that whether or not such chapter preempts appellee's authority to approve plans for a water system is not relevant to the issues of exclusive authority presented in this case.

Accordingly, appellants' fourth assignment of error is not well taken.

## III

■ Appellants, in their fifth assignment of error, contend that the trial court erred in granting an injunction which prevented them from issuing bonds or expending funds for the preparation of plans for expanding its water supply system.

■ Upon appellate review, the trial court's grant of an injunction will be reversed only upon a showing of an abuse of discretion. *Friendly Village v. Duty* (1992), 75 Ohio App.3d 555, 557, 599 N.E.2d 878, 879. However, trial courts should be cautious in granting injunctions, "especially in cases affecting a public interest where the court is asked to interfere with or * * * to control the action

of another department of government." *Country Club Hills Homeowners Assn. v. Jefferson Metro. Hous. Auth.* (1981), 5 Ohio App.3d 77, 5 OBR 189, 449 N.E.2d 460, paragraph three of the syllabus.

■ R.C. 733.56 and 733.59 permit a village solicitor or a taxpayer of a municipality to seek an injunction to prevent the misapplication of funds of a municipality. Appellee's arguments that these statutory sections are not applicable and, consequently, should be ignored are without merit. The sale of bonds or notes would indeed produce public funds designated to be spent on plans for the expansion of appellants' water services. Moreover, we can find no statutory authority in which another political subdivision is given standing to seek such an injunction. However, absent such statutory authority, standing to seek an injunction may be conferred on a party under common law principles, but only where a party has a sufficient personal stake in the outcome of a controversy. *Cleveland v. Shaker Hts.* (1987), 30 Ohio St.3d 49, 51, 30 OBR 156, 158, 507 N.E.2d 323, 325; *Middletown v. Ferguson* (1986), 25 Ohio St.3d 71, 75, 25 OBR 125, 128, 495 N.E.2d 380, 384.

In the instant case, because of the authority it asserts over Danbury Township, appellee has a sufficient personal stake in the controversy involving Sewer District No. 7 to bring the action to enjoin appellants from extending water service into the township area beyond Marblehead village limits. However, appellee fails to set forth any authority, statutory or otherwise, to police the actions of the village of Marblehead or to establish a sufficient interest regarding the expenditure of public funds resulting from the sale of bonds or notes. Therefore, we conclude that appellee had no standing to enjoin appellants' sale of bonds or notes for the purpose of extending water facilities into Sewer District No. 7. Consequently, the trial court erred in granting a permanent injunction prohibiting such sale.

Accordingly, appellants' fifth assignment of error is well taken.

## IV

We now address the assignment of error brought on appeal by the taxpayer appellants. We have already determined, on motion, that the taxpayer appellants have standing to file an appeal as parties attempting to intervene in the action between the Ottawa County Board of Commissioners and the village of Marblehead. Therefore, we will address only the issues as to the trial court's denial of their motion to intervene.

Civ.R. 24(A)(2) permits a party to intervene in an action "when the party claims an interest relating to the property or transaction which is the subject of the action and he is so situated that the disposition of the action may as a practical

matter impair or impede his ability to protect that interest, *unless the applicant's interest is adequately represented by existing parties.*" (Emphasis added.) See, also, *Morris v. Invest. Life Ins. Co.* (1966), 6 Ohio St.2d 185, 189, 35 O.O.2d 304, 306, 217 N.E.2d 202, 206.

█ In this case, we acknowledge the interests of the taxpayer appellants in presenting their views and concerns to the trial court. However, our review of the record discloses that the village of Marblehead adequately represented the interests of the taxpayer appellants, including the fact that many township residents had requested continued water service from Marblehead. Therefore, we cannot conclude that the trial court erred in denying the taxpayer appellants' motion to intervene.

Accordingly, the taxpayer appellants' sole assignment of error is not well taken.

The decision of the trial court is affirmed as to its rulings granting a permanent injunction preventing appellants from constructing or extending its water system into Sewer District No. 7. Further, the trial court's decision to deny the taxpayer appellants' motion to intervene is affirmed. Finally, the trial court's decision to grant a permanent injunction preventing appellants from selling bonds or notes connected with the plans for construction of an expanded water system is reversed. Court costs of this appeal shall be divided equally among all parties to the appeal.

*Judgment affirmed in part
and reversed in part.*

ABOOD, P.J., and GLASSER, J., concur.

DECISION ON RECONSIDERATION, JUNE 28, 1995█

*Per Curiam.*

On March 31, 1995, this court issued an opinion and judgment entry affirming the ruling of the Ottawa County Court of Common Pleas, which denied the right of appellants, the village of Marblehead and Kathleen K. Dziak, the Mayor of Marblehead, to extend water service outside its municipal boundaries. On April 10, 1995, appellants filed a motion for reconsideration. Appellee, the Board of County Commissioners of Ottawa County, filed a memorandum in opposition to appellants' motion.

█ The standard for reviewing a motion for reconsideration is "whether the motion * * * calls to the attention of the court an obvious error in its decision or raises an issue for our consideration that was either not considered at all or was not fully considered by us when it should have been." *Matthews v. Matthews* (1981), 5 Ohio App.3d 140, 5 OBR 320, 450 N.E.2d 278, syllabus.

Appellants first argue that this case is not analogous to the conflicts presented in various cases cited by this court. However, it is our opinion that the balancing test of *Columbus v. Teater* (1978), 53 Ohio St.2d 253, 7 O.O.3d 410, 374 N.E.2d 154, addresses precisely the conflict presented herein and that we have fully addressed this argument. Therefore, once again, we conclude appellants' arguments as to this issue are without merit.

█ Appellants also contend that this court's decision failed to consider an agreement between the parties, referred to in appellee's motion for summary judgment that was before the trial court. Contained in appellee's summary judgment motion was a statement made by appellee that the adoption of the balancing test prescribed by *Columbus v. Teater, supra,* would necessitate the scheduling of an evidentiary hearing as genuine issues of material fact exist.

In the interest of justice, we are persuaded that a remand to the trial court is necessary to permit application of the *Teater* balancing test, as the record indicates that the parties had an agreement to schedule an evidentiary hearing to determine relevant issues of fact that had not yet been fully put before the court in the event the *Teater* test was adopted.

Accordingly, appellants' motion is well taken in part. We hereby vacate only that part of our prior judgment of March 31, 1995, which affirmed the trial court's conclusion that appellee's authority to sell water in Sewer District No. 7 outweighs appellants' authority. This case is remanded to the Ottawa County Court of Common Pleas for the specific purpose of allowing the trial court to hold an evidentiary hearing and apply the test enunciated in *Teater, supra.* Court costs of this appeal remain divided equally between the parties.

*Motion granted;*
*Judgment vacated in part*
*and cause remanded.*

ABOOD, P.J., GLASSER and SHERCK, JJ., concur.

### DECISION ON MOTION TO VACATE, JULY 19, 1995

*Per Curiam.*

On March 31, 1995, this court issued an opinion affirming in part and reversing in part a judgment of the Ottawa County Court of Common Pleas. On April 10,

1995, appellants, the village of Marblehead and Kathleen K. Dziak, the Mayor of Marblehead, filed a motion for reconsideration in this court regarding our March 31, 1995 opinion. Appellants also filed an appeal regarding this decision in the Supreme Court of Ohio on May 15, 1995. On June 28, 1995, this court issued an opinion vacating a part of our March 31, 1995 opinion and remanding the case to the trial court for an evidentiary hearing. On July 6, 1995, appellee, the Board of County Commissioners of Ottawa County, filed a motion in this court to vacate our decision of June 28, 1995.

Appellee argues that this court was divested of jurisdiction when appellants' appeal was perfected to the Supreme Court and this court did not rule on appellants' motion for reconsideration within forty-five days as required by App.R. 26(C).

S.Ct.Prac.R. II(2)(D)(1) states:

"After an appeal is perfected from a court of appeals to the Supreme Court, the court of appeals is divested of jurisdiction, except to take action in aid of the appeal, *to rule on an application for reconsideration filed with the court of appeals pursuant to Rule 26 of the Rules of Appellate Procedure,* or to rule on a motion to certify a conflict under Article IV, Section 3(B)(4) of the Ohio Constitution." (Emphasis added.)

The Staff and Committee Note to S.Ct.Prac.R. II states:

"Section 2(D) clarifies what jurisdiction is retained by the court of appeals after an appeal to the Supreme Court is perfected. In the interest of judicial economy, the Committee concluded that the court of appeals should not retain jurisdiction to rule on an application for reconsideration after jurisdictional memoranda are submitted to the Supreme Court pursuant to S.Ct.Prac.R. III. * * * *"

App.R. 26(C) provides:

"If an application for reconsideration under division (A) of this rule is filed with the court of appeals, the application shall be ruled upon within forty-five days of its filing."

The 1994 Staff Note to App.R. 26(C) states:

" * * * Judicial economy is promoted when the court of appeals resolves applications for reconsideration before the Supreme Court begins its review of the case, thereby avoiding duplicative effort by the Supreme Court. * * * *"

A court of appeals acts within its jurisdiction and does not infringe the jurisdiction of the Supreme Court when it rules on an application for reconsideration before the Supreme Court grants a motion for leave to appeal. *State v. Murphy* (1990), 49 Ohio St.3d 293, 295, 551 N.E.2d 1292, 1295.

Appellee relies on the Staff and Committee Note to S.Ct.Prac.R. II that purports to divest a court of appeals of jurisdiction once jurisdictional memoranda are filed with the Supreme Court. However, appellee would appear to concede that, despite the Staff and Committee Note, pursuant to S.Ct.Prac.R. II, this court would have retained concurrent jurisdiction to rule on appellants' motion for reconsideration if our ruling had been made within the forty-five-day limit of App.R. 26(C).

At the time of our decision, the Supreme Court had not yet granted appellants leave to appeal. In our view, the judicial economy espoused in the Staff Note to App.R. 26(C) is promoted and valuable Supreme Court resources are preserved when, pursuant to *Murphy*, we make our ruling before the Supreme Court exercises exclusive jurisdiction by granting appellants leave to appeal. Therefore, even though our decision was made after the forty-five day limit of App.R. 26(C), we conclude that this court retained jurisdiction to vacate in part our decision of March 31, 1995.

Accordingly, appellee's motion to vacate is not well taken and is denied.

*Motion denied.*

ABOOD, P.J., GLASSER and SHERCK, JJ., concur.