[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] OPINION AND JUDGMENT ENTRY
* * * * *
This is an appeal from a declaratory judgment issued by the Ottawa County Court of Common Pleas. The common pleas court found unconstitutional a statute which denied a municipality the exclusive right to construct, own and operate a municipal utility within its borders. Consequently, it declared that the county commissioners were without authority to construct water improvements within the municipality without the municipality's approval. Because we conclude the trial court's constitutional analysis was proper, we affirm.
Appellees are the village of Marblehead, Ohio, (an incorporated municipality in Ottawa county) and its mayor. Appellant is the Ottawa County Board of Commissioners. The County Commissioners' Association of Ohio filed an amicus brief on appellant's behalf.
We have before us two competing governmental entities each of whom wish to provide water to a three hundred seventy acre parcel of land. The land, originally part of Danbury Township, has since been annexed into the village of Marblehead. The dispute originally arose when appellant's efforts to imple ment a county-wide regional water master plan came into conflict with appellees' desire to sell excess municipal water to unincorporated portions of Danbury Township.
In that dispute, appellant brought suit and obtained a declaratory judgment in which the trial court concluded that appellees were without a constitutional right to extend water service into the township and that appellant had exclusive authority to provide such service. We affirmed the trial court, but for different reasons. Concluding that the rights of the county and the village to provide water service in the disputed area were, "* * * of equal dignity," we applied the balancing test approved in Columbus v. Teater (1978), 53 Ohio St.2d 253. The result of our analysis was that Ottawa county's rights to provide water to "non-municipal" residents, "* * * are paramount to Marble head's rights. Board of County Commissioners of Ottawa County v.Village of Marblehead (1995), 102 Ohio App.3d 306, 314. On reconsideration, however, we remanded the matter to the trial court for an evidentiary hearing upon which the trial court could apply the Teater test. Id. at 318.
On March 31, 1995, we announced our original decision. On April 3, 1995, residents of the three hundred seventy acres of Danbury Township petitioned Marblehead for annexation. While the village council approved the annexation, appellant rejected the plan. This act led to a suit in which the Ottawa County Common Pleas Court found that appellant's refusal to ratify the annexation was arbitrary and unreasonable. The court then ordered the county to approve the plan.
Appellee village was permitted to formally annex the territory at issue on November 14, 1996. On February 13, 1997, appellee village's council authorized an engineering study for water service in the annexed area. Shortly thereafter, appellant instituted the declaratory action which underlies this appeal, seeking a determination that R.C. 6103.04 gives the county continuing jurisdiction in the annexed area until the water works plan, which was approved and adopted at the time of annexation, is completed. Appellant also sought to enjoin appellees from going forward with its own water project.
Appellees counterclaimed requesting a determination that R.C. 6103.04 violates Section 4, Article XVIII of the Ohio Constitution, one of Ohio's municipal home rule amendments. Appellees similarly sought an injunction to prevent appellant from going forth with its water project in the annexed area.
Following a hearing on appellant's complaint and appellees' counterclaim, the trial court ruled that appellees had exclusive authority to provide water service within the annexed area and that, to the extent that R.C. 6103.01, et seq. interferes with that right, it is unconstitutional. The court further ordered that appellant could not proceed with its proposed project and, in fact, could construct no water improvements within the village limits without the village's approval.
Appellant now appeals that decision, setting forth the following twelve assignments of error:
"FIRST ASSIGNMENT OF ERROR:
 The trial court erred in holding that R.C. 6103.04 is unconstitutional as violative of Article XVIII, Section 4 of the Ohio Constitution.
"SECOND ASSIGNMENT OF ERROR:
The trial court erred in holding that a
 municipality has the `absolute' and `exclusive' authority under Article XVIII, Section 4 of the Ohio Constitution to construct water facilities in an area formerly part of a count sewer district but annexed to the municipality where R.C. 6103.04 provides a board of county commissioners the continuing jurisdiction to complete the construction, financing and assessment of public water facilities in the annexed area.
"THIRD ASSIGNMENT OF ERROR:
 The trial court erred in holding that R.C. 6103.04 is unconstitutional because the con struction, financing and assessment of water facilities in the subject annexed area have no extraterritorial effect or statewide import.
"FOURTH ASSIGNMENT OF ERROR:
 The trial court erred in applying an `absolute' standard in determining the constitutionality of R.C. 6103.04 rather than the `substantial interference' standard adopted by the Ohio Supreme Court.
"FIFTH ASSIGNMENT OF ERROR:
 The trial court erred in failing to defer to the legitimate exercise of the state's police power and in otherwise failing to apply the correct legal standards in determining the constitutionality of R.C. 6103.04.
"SIXTH ASSIGNMENT OF ERROR:
 The trial court erred in failing to apply the `balancing test' of Columbus v. Teater (1978), 53 Ohio St.2d 253
to resolve any potential conflict between the state's police power under R.C. 6103.04 and Article XVIII, Section 4 of the Ohio Constitution rather than proceeding directly to conclude that R.C. 6103.04 was unconstitutional.
"SEVENTH ASSIGNMENT OF ERROR:
 The trial court erred in enjoining the Ottawa County Commissioners from completing the construction of water facilities and establishing assessments for such facilities in the subject territory, which was part of the county's sewer district but has been annexed by the Village of Marblehead, where R.C. 6103.04 provides that specific authority.
"EIGHTH ASSIGNMENT OF ERROR:
 The trial court erred in holding that the Ottawa County Commissioners have no authority to construct water facilities within territory annexed by a municipality absent permission when R.C. 6103.26 expressly authorizes a board of county commissioners to construct a water main within a municipal corporation to serve a sewer district located outside the municipality.
"NINTH ASSIGNMENT OF ERROR:
 The trial court erred in failing to address the validity of bonds or notes issued and assessments imposed by the Ottawa County Commissioners as respects the water facilities in the subject annexed area where R.C. 6103.04 expressly provides that such bonds, notes and assessments shall remain valid notwithstanding the annexation.
"TENTH ASSIGNMENT OF ERROR:
 The trial court erred in granting the Defendants-Appellees the declaratory judgment and injunctive relief provided in the trial court's order.
"ELEVENTH ASSIGNMENT OF ERROR:
 The trial court erred in failing to grant Plaintiff-Appellant the declaratory judgment and injunctive relief requested, which relief is entirely consistent with R.C. 6103.04.
"TWELFTH ASSIGNMENT OF ERROR:
 The trial court erred in assuming jurisdiction over Defendants-Appellees' request for declaratory relief regarding the constitutionality of R.C. 6103.04 when Defendants-Appellees failed to serve the Ohio Attorney General pursuant to R.C. 2721.12."
 I
We will deal with appellant's twelfth assignment of error first. Appellant contends that the trial court erred in ruling on the constitutionality of a statute absent notice the Ohio Attorney General. See R.C. 2721.12.
The record, however, belies appellant's assertion. In fact, the trial court attached to its opinion a letter from the Attorney General's office declining to participate in the action. Clearly, the Attorney General had notice of the proceeding. Accordingly, appellant's twelfth assignment of error is not well-taken.
 II
The remainder of appellant's assignments of error are all rooted in appellant's assertion that the trial court erred in determining the primacy of Section 4, Article XVIII, Ohio Constitution, over R.C. 6103.04.
Section 4, Article XVIII of the Ohio Constitution states:
 "Any municipality may acquire, construct, own, lease and operate within or without its corporate limits, any public utility the product or service of which is or is to be supplied to the municipality or its inhabit ants, and may contract with others for any such product or service. The acquisition of any such public utility may be by condemnation or otherwise, and a municipality may acquire thereby the use of, or full title to, the property and franchise of any company or person supplying to the municipality or its inhabitants the service or product of any such utility."
R.C. 6103.04 provides:
 "Whenever any portion of a sewer district is incorporated as a municipal corporation or annexed to a municipal corporation, the area so incorporated or annexed shall remain under the jurisdiction of the board of county commissioners for water-works purposes until any water supply or water-works improvements for said area for which detailed plans have been prepared and the resolutions declaring the necessity thereof has been adopted by the board have been completed or until said board has abandoned such projects. Such incorporation or annexation of any part of a district shall not interfere with or render illegal any issue of bonds or certificate of indebtedness made by the board in accordance with sections 6103.02 to 6103.30, inclusive, of the Revised Code, to provide payment for the cost of construction and maintenance of any water improvements within such area, or with any assessments levied or to be levied upon the property within such area to provide for the payment of the cost of construction and maintenance."
Appellant asserts that R.C. 6103.04 is a narrowly drafted measure rationally related to legitimate governmental purposes. Appellant suggests it was enacted to: 1) permit counties to complete water facilities in an orderly fashion; 2) protect county investment; and 3) avoid duplicative and wasteful utility services. Antecedent to its argument, appellant cites the general rule that enactments of the General Assembly are presumed constitutional and will not be deemed unconstitutional unless it, "* * * appears beyond a reasonable doubt that the legislation and constitutional provisions are clearly incompatible."Austintown Twp. Bd. of Trustees v. Tracy (1996), 76 Ohio St.3d 353,356, quoting State ex rel. Dickman v. Defenbacher
(1955), 164 Ohio St. 142, paragraph one of the syllabus. It is not the role of the judiciary to question the wisdom of policy of a statute, only to determine whether the legislature acted within its power. Id.
Appellant argues that the trial court's determination that appellees' right to provide water to its citizens was "absolute" and "exclusive" ignored the presumption of constitutionality afforded legislative enactments. Further, according to appellant, the issue is not whether one or the other of the parties have the right to serve residents of the annexed area, but which has the right to construct and finance a water system. This, appellant contends, is not covered by Section 4, Article XVIII.
Appellant further suggests that a municipality's constitutional home rule authority is finite and must yield to the state's police power in matters of statewide interest. Examples of this may be found in Columbus v. Teater, supra (designation of a scenic waterway blocks extraterritorial construction plans for a city water project); Bd. of Delaware Cty. Comm. v. Columbus
(1986), 26 Ohio St.3d 179, (environmental regulations apply to a municipal sewer system); Canton v. Whitman (1975), 44 Ohio St.2d 62, (a requirement for fluoridating all public water systems applies to municipal systems); this court's prior ruling in Ottawa Cty. Bd. ofComm. v. Marblehead, 102 Ohio App.3d, supra, (remand to balance equities for competing water suppliers in unincorporated area);State ex rel. Toledo Edison v. Clyde (1996), 76 Ohio St.3d 508
(a municipality cannot require an electric company to abandon its facilities without PUCO approval). In this case, appellant claims that the state has a legitimate interest in invoking its police power in order to preserve continuity and stability in the construction and financing of public water projects in county systems that have been annexed by municipalities. Without the transitional rules of R.C.6103.04, appellant argues, county interest in undertaking projects like this would be chilled and the validity of the bonds, notes and assessments which support construction and maintenance of such facilities would be called into question. Appellant concludes that R.C. 6103.04 does not substantially interfere with the power granted municipalities by the constitution and should be allowed to coexist with these powers in this specific instance. Alternatively, appellant suggests that the Columbus v. Teater
balancing test should be employed to weigh the equities.
In its amicus curiae brief, the County Commissioners' Association of Ohio supports appellant's arguments.
Article XVIII of the Ohio Constitution, the "home rule" provisions, constitutes a direct grant of power from the people of Ohio to Ohio's municipalities. Swank v. Village of Shiloh (1957),166 Ohio St. 415, 417. This power is independent of, and of comparable stature to, the power the people have delegated to the General Assembly,Cleveland v. Pub. Util. Comm. (1921), 102 Ohio St. 341, 348, and is required to yield to the enactments of the legislature only when those enactments constitute "* * * general laws of statewide scope and application * * *" or represent the, "* * * general exercise of police power by the state * * *." Canton v. Whitman, supra, at 65. "General laws" mean, "statutes setting forth police, sanitary or other similar regulations * * * not statutes which purport only to grant or limit the legislative powers of a municipal corporation * * *." Rispo Realty Development Co.v. Parma (1990), 55 Ohio St.3d 101, 103, citing West Jefferson v.Robinson (1965), 1 Ohio St.2d 113, 118. Legislation enacted pursuant to a general exercise of the state's police power is valid as applied to the municipal operation of a public utility, "* * * where such legislation does not interfere with the ownership or operation of the utility."Canton v. Whitman, supra, at paragraph three of the syllabus. However, under certain limited circumstances, a valid exercise of the state's police power may need to be balanced against the constitutionally protected interest of municipal utilities. Columbus v. Teater,supra, at 258-259.
Consequently, in our analysis of R.C. 6103.04, or any statute which purportedly infringes on a municipality's right to own and operate a public utility, we must first determine whether there is a conflict between the statute and the constitutional right. If there is none, our analysis is complete and the statute is constitutionally valid. However, if a conflict exists, we must then determine whether the statute is a general law of statewide scope and application or represents a general exercise of police power. If a statute is a general law or functions as an exercise of police power, it must then be determined whether the interest furthered by the statute outweighs that of the municipality in acquiring, constructing, owning and operating a public utility.
In the first instance, we note that Section 4, Article XVIII specifically bestows on a municipality the right to, "* * * acquire, construct, own, lease and operate * * *" public utilities. R.C. 6103.04 specifically seeks to regulate the construction and ownership of a utility in an area which becomes incorporated as, or annexed to, a municipal corporation. Therefore, the statute is, on its face, in conflict with the Ohio Constitution.
As to whether the statute is a general law we note the obvious: it is not a general law because it touches only municipalities. By its own terms the statute affects no other portion of the state. As to the issue of R.C. 6103.04 being a general exercise of police power, appellant suggests three reasons why it believes it is. According to appellant the statute: 1) promotes the orderly completion of water projects; 2) protects the county's investment (especially the county's ability to issue bonds or assess levies); and 3) avoids duplicative and wasteful services.
Appellant, however, simply lacks standing to raise the first and third of these rationale. Although it has prepared plans (of which this three hundred seventy acres represents but a small portion of a county wide comprehensive system) and has passed a resolution of necessity, the record fails to reveal the purchase of any construction materials or the initiation of any physical construction activity. Similarly, since there is no partially or fully completed system in the ground, no issue exists concerning the duplication of services or any implication of waste.
We also note that, according to the record, no construction bonds have been issued or assessments levied. Nonetheless, appellant and the Ohio County Commissioners' Association through their amicus brief argue that any decision calling into question the validity of R.C. 6103.04
would have a chilling effect on potential investors and cause counties to be wary of planning projects in areas which are potential municipal annexation sites. In answer to appellant's public policy concerns, we note that as a general rule, the mere protection of a governmental entity's exchequer is insufficient to implicate the police power of the state when balanced against other important interests. See Bd. of Cty. Comm. v. City ofColumbus, supra, at 183.[1]
The alleged chilling effect on the ability of counties to issue bonds is mere speculation in this case. Appellant presented no evidence that this would occur. As for inhibiting county interests in providing services to potentially annexable areas, this fear is highly unlikely when the county has the support of the residents of the area to which the service is to be provided. Consequently, we cannot find that R.C. 6103.04 touches on any legitimate state interest by which statewide police power should or could be invoked.
Accordingly, we hold that, to the extent R.C. 6103.04
inhibits a municipality's ability to acquire, construct, own, lease or operate a public utility, it violates Section 4, ArticleXVIII of the Ohio Constitution and must be deemed a nullity. Appellant's Assignments of Error Nos. 1 through 7 and 9 through 11 are found not well-taken.
In its eighth assignment of error, appellant complains the trial court erred when it ruled that appellant must request appellees' permission to construct pass through facilities within a municipality. This is contrary to R.C. 6103.26, according to appellant.
The same constitutional authority for a municipality to control utility construction within its borders applies to R.C.6103.26. Consequently, the county must seek permission from a municipality to construct waterlines within the municipality's borders. However, if the municipality unreasonably denies such permission, depending on the specific facts and circumstances, the general exercise of the state's police power may be impli cated. Since such permission has not yet been sought, this issue is not ripe for consideration. Appellant's eighth assignment of error is found moot.
On consideration whereof, the court finds substantial justice has been done the party complaining, and the judgment of the Ottawa County Court of Common Pleas is affirmed. It is ordered that appellant pay the court costs of this appeal.
JUDGMENT AFFIRMED.
A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. See, also, 6th Dist.Loc.App.R. 4, amended 1/1/98.
 ______________________________ George M. Glasser, J.
JUDGE
 _______________________________ Melvin L. Resnick, J.
JUDGE
 ____________________________ James R. Sherck, J.
JUDGE
CONCUR.
[1] In this matter, there is some dispute as to whether one party or the other proceeded with plans when it should not have. Appellant insists it began its plan for a comprehensive system well before appellees contemplated annexation. Appellees insist that they completed plans for the annexed area before detailed plans for the county system were complete and a resolution of necessity was passed by appellant. Appellant deliberately and wrongfully delayed approval of the annexation until after it had passed its resolution, according to appellee. However, whatever the truth of these allegations, it does not implicate constitutional authority for these entities.