CITY OF COLUMBUS, APPELLANT, *v.* PUBLIC UTILITIES
COMMISSION OF OHIO, APPELLEE.
OHIO MUNICIPAL ELECTRIC ASSOCIATION ET AL., APPELLANTS,
v. PUBLIC UTILITIES COMMISSION OF OHIO, APPELLEE.

(Nos. 78-1235 and 78-1287—Decided June 20, 1979.)

428

*Mr. Gregory S. Lashutka,* city attorney, *Mr. Patrick M. McGrath* and *Mr. John W. Bentine,* for appellant city of Columbus.

*Mr. John C. Young* and *Mr. Michael Allerding,* for appellants Ohio Municipal Electric Association et al.

*Mr. William J. Brown,* attorney general, *Mr. Marvin I. Resnik* and *Mr. Kevin F. Duffy,* for appellee.

HOLMES, J. The first issue presented by these appeals is whether municipally owned or operated electric light companies are "electric light companies" within the purview of R. C. 4905.70.

R. C. 4905.70 provides, in pertinent part, that:

"* * * The public utilities commission, by a rule adop-

ted no later than October 1, 1977, and effective and applicable no later than November 1, 1977, shall require each electric light company to offer to such of their residential customers whose residences are primarily heated by electricity the option of their usage being metered by a demand or load meter. * * * The rule shall require each company to bill such of its customers who select such option for those kilowatt hours in excess of a prescribed number of kilowatt hours per kilowatt of billing demand, at a rate per kilowatt hour that reflects the lower cost of providing service during off-peak periods.''

R. C. 4905.70 was enacted as a part of Section 1 of Am. Sub. H. B. No. 230. Although the statute itself does not define the term ''electric light company,'' Section 12 of the bill provides that:

''All provisions of this act shall be construed to apply to electric light, natural gas, or gas companies operated not for profit and to their customers. With the exception of the provisions of section 5727.31 of the Revised Code as amended by this act, all provisions of this act shall be construed to apply to electric light, natural gas, or gas companies owned or operated by a municipal corporation and to their customers.''

It is noted that Section 14 of Am. Sub. H. B. No. 230 prospectively repeals several sections of that act, including Section 12 set forth above. Nevertheless, this court finds the language of Section 12 itself to be a plain and unambiguous expression of the General Assembly's intent to require municipally owned or operated electric light companies to comply with the rule promulgated by the commission, pursuant to R. C. 4905.70. ''Where the language itself clearly expresses the legislative intent, the courts need look no further.'' *Katz* v. *Dept. of Liquor Control* (1957), 166 Ohio St. 229, 231. See, also, *Carmelite Sisters, St. Rita's Home,* v. *Bd. of Review* (1969), 18 Ohio St. 2d 41, 46; *Provident Bank* v. *Wood* (1973), 36 Ohio St. 2d 101, 105.

The term ''electric light company,'' as used within R. C. 4905.70, does, by virtue of Section 12 of Am. Sub. H. B.

No. 230, enacted effective October 9, 1977, include municipally owned and operated electric light companies for the purpose of requiring such companies to offer their residential customers demand or load meters for measuring electricity used for heating purposes in off-peak periods.

Having determined that R. C. 4905.70 was intended to apply to municipal electric light companies, it becomes necessary for the court to address the constitutional issue raised by these appeals, which issue is whether R. C. 4905.-70 conflicts with the provisions of Section 4, Article XVIII of the Constitution of Ohio.

Section 4 of Article XVIII provides that:

"Any municipality may acquire, construct, own, lease and operate within or without its corporate limits, any public utility the product or service of which is or is to be supplied to the municipality or its inhabitants, and may contract with others for any such product or service. The acquisition of any such public utility may be by condemnation or otherwise, and a municipality may acquire thereby the use of, or full title to, the property and franchise of any company or person supplying to the municipality or its inhabitants the service or product of any such utility."

Appellants in their contention that R. C. 4905.70 is unconstitutional rely on prior decisions of this court which held that the state may not attempt to limit the power of a municipality to own or operate a public utility without running afoul of Section 4 of Article XVIII. *E. g., State, ex rel. McCann,* v. *Defiance* (1958), 167 Ohio St. 313. Appellants argue that R. C. 4905.70 imposes such a limitation by granting the commission jurisdiction over municipal electric rates.

The Public Utilities Commission, appellee herein, contends that the statute must be upheld as a reasonable exercise of the state's police power. In support of its position, appellee relies on *Canton* v. *Whitman* (1975), 44 Ohio St. 2d 62, and *Columbus* v. *Teater* (1978), 53 Ohio St. 2d 253. In those cases this court upheld statutes enacted under the state's police power, despite their impact upon a

municipality's power to own or operate a public utility.

Although we agree with appellee that the municipal public utility power is not absolute, and that the purpose of the statute under consideration promotes a legitimate state interest, we think it clear that the statute must fall insofar as it attempts to impose controls upon the operation of municipal electric light companies.

A municipality's power to own and operate a public utility is "* * * derived directly from the people, pursuant to the provisions of Sections 4 and 6 of Article XVIII of the Ohio Constitution, and not from the General Assembly." *McCann, supra,* at page 316. Unlike the power granted by Section 3 of Article XVIII to enact local police, sanitary and similar regulations, the municipal public utility power is not necessarily subordinate to conflicting general laws. *Pfau* v. *Cincinnati* (1943), 142 Ohio St. 101, 104.

The General Assembly may not attempt to limit or restrict a municipality's power to operate a public utility. *Whitman, supra; McCann, supra; Swank* v. *Shiloh* (1957), 166 Ohio St. 415; *East Cleveland* v. *Bd. of Edn.* (1925), 112 Ohio St. 607, 616 (Marshall, C. J., dissenting); *Euclid* v. *Camp Wise Assn.* (1921), 102 Ohio St. 207. Thus, in *McCann, supra,* this court struck down a statute which required municipalities to furnish water to nonresidents at a rate not to exceed 110 percent of that charged to residents. In a case, such as *McCann,* where the very purpose of a statute is to restrict the constitutional grant of power to a municipality, the courts will not hesitate in declaring the statute unconstitutional.

However, not every statute which has an impact upon the municipal public utility power is a restriction thereon. If *McCann* may be said to represent one pole of the spectrum of relations between the state and its municipalities, then *Whitman, supra,* represents the opposite pole. The statute at issue in *Whitman* required fluoridation of all public water supplies. The city of Canton attacked the statute on the ground, *inter alia,* that it violated Section 4 of Article XVIII, as applied. In sustaining the statute's constitutionality, the court reasoned that the statute bore a

real and substantial relation to the public health, and cast only an incidental burden upon the operation of municipal utilities.

The *Whitman* case did not represent a retreat from the strong home rule principles enunciated in *McCann*, as seems to be suggested by the parties in the instant appeals. The holding in *Whitman* was implicit within the earlier *McCann* decision, wherein the following hypothesis was set forth at page 317:

" * * * [I]f the General Assembly passes an otherwise valid statute requiring certain safety precautions in the operation of certain kinds of machines, it can hardly be argued seriously that such a law will restrict municipalities in the operation of public utilities * * * merely because such machines are frequently used in the operation of such public utilities."

In cases such as *Whitman* and that posed by the above hypothesis, where the state enacts a statute promoting a valid and substantial interest in the public health, safety, morals or welfare; where the statute's impact upon municipal utilities is incidental and limited; and where the statute is not an attempt to restrict municipal power to operate utilities, the statute will be upheld. Conversely, in cases such as *McCann*, where the purpose of a statute is to control or restrict municipal utilities, the statute must yield. The majority of cases, however, such as the ones at bar, fall between these extremes.

In *Teater, supra* (53 Ohio St. 2d 253), for example, the Director of the Department of Natural Resources was authorized by statute to designate any watercourse within the state as a "scenic river area." The effect of such a designation was to prohibit channel modification of the watercourse.

The city of Columbus had appropriated and expended funds for the construction of a water supply reservoir outside of its corporate limits, on a watercourse subsequently designated a "scenic river area." The city challenged the constitutionality of the statute as applied, contending, a-

mong other things, that it violated the provisions of Section 4 of Article XVIII.

In sustaining the statute, this court stated, at page 261, that:

"Ultimately, the judiciary must determine the facts in such controversies, balance the rights of the state against those of the municipality and endeavor to protect the respective interests of each. In such instances, the outcome of the constitutional argument involved will depend upon the facts and circumstances of the case."

In *Teater*, this court emphasized the state's compelling interest in the conservation and preservation of the rivers and streams of this state. Although the burden upon the city was substantial in that case, the state's strong interest justified the imposition of such a burden. Further, the significant extra-territorial effect which would have resulted from the city's proposed rechanneling was also material to the holding in *Teater*.

The relative interests presented by the appeals herein differ significantly from those existing in *Teater*. R. C. 4905.70 and Rule 4901: 1-10-01, Ohio Adm. Code, impose a direct and substantial restriction upon the operation of appellants' municipal electric light companies. By attempting to subject the rate structures of these companies to control of the Public Utilities Commission, the General Assembly has overstepped the line drawn by the Constitution.

R. C. 4905.70, insofar as such section would require municipally owned and operated electric light companies to offer their customers the option of metering their electricity consumption by the use of demand or load meters, and would require the companies to bill the customers at a rate that reflects the cost of providing service during off-peak periods, is violative of Section 4, Article XVIII of the Ohio Constitution.

Appellee points to the disproportionate impact upon electric heating customers of the rising costs of electric service in recent years. It is asserted that a high percent-

age of the electric heating customer's electricity consumption occurs 'during the lower cost, "off-peak hours," and that the statute is aimed at reducing inequities presently suffered by such customers. While this may be a laudable motive, and within the General Assembly's power to promote the general welfare, we cannot say that it is such a substantial state interest that it justifies restricting the power of a municipality to set its own electric rates.

The statute at issue has little, if any, relation to the conservation of energy which is obviously a statewide concern. The requirement of providing special meters and lower off-peak rates by the municipal electric light companies has no real and substantial relationship to the general welfare of the state, or to the conservation of energy or natural resources. Furthermore, municipal noncompliance with the statutory mandate would have no significant extra-territorial effect herein. We have no reason to suspect that the interests of a municipality's electric heating customers will be better protected by the commission, an appointed body, than by their elected municipal representatives.

R. C. 4905.70 which requires the Public Utilities Commission to promulgate regulations which would control the price municipally owned and operated electric light companies could charge customers using electricity for heating their homes during off-peak periods, may not, in balancing the interests of the state and of local communities, be supported as an exercise of a valid state police power. *State, ex rel. McCann*, v. *Defiance*, 167 Ohio St. 313, applied and followed.

For the reasons expressed herein, we hold that R. C. 4905.70 contravenes Section 4 of Article XVIII of the Ohio Constitution to the extent that it purports to apply to municipal electric light companies. Accordingly, the commission's order of June 29, 1978, is hereby reversed.

*Order reversed.*

CELEBREZZE, C. J., HERBERT, W. BROWN, P. BROWN, SWEENEY and LOCHER, JJ., concur.