City of Columbus, Appellee and Cross-Appellant, *v.* Ohio Power Siting Commission et al., Appellants and Cross-Appellees.

(No. 78-1236—Decided June 20, 1979.)

*Mr. Gregory S. Lashutka,* city attorney, *Mr. Patrick M. McGrath* and *Mr. Gordon P. Shuler,* for appellee and cross-appellant.

*Mr. William J. Brown,* attorney general, *Mr. E. Dennis Muchnicki,* for appellants and cross-appellees.

PAUL W. BROWN, J.  The issue in this cause arises from a confrontation of the legislature's inherent constitutional authority to exercise the police power and the city of Columbus' constitutional right to construct, own and operate a public utility.

The relevant constitutional provision, Section 4 of Article XVIII of the Ohio Constitution, states, in part:

"Any municipality may acquire, construct, own, lease and operate within or without its corporate limits, any public utility the product or service of which is or is to be supplied to the municipality or its inhabitants, and may contract with others for any such product or service * * *."

The pertinent statutory provisions are R. C. 4906.04, which requires every person to obtain from the Power Siting Commission a certificate of environmental compatibility and public need prior to the commencement of construction of a major utility facility, and R. C. 4906.10(A), which delineates the factors the commission must consider in determining whether a certificate should issue.[2]  The relevant portion of R. C. 4906.10(A) states, in part:

"The commission shall not grant a certificate for the

[2] Of the other statutes under attack in this cause, R. C. 4906.01 is a definitional provision; R. C. 4906.03 identifies powers and duties of the commission; R. C. 4906.06 sets out procedures to obtain a certificate; R. C. 4906.13 is jurisdictional; and R. C. 4906.15 requires utility operators to submit annual reports to the commission.  The vitality of these statutes depends upon resolution of the constitutional challenge to R. C. 4906.04 and 4906.10.  Likewise, PSC-5-01(A), enacted pursuant to these provisions, turns upon determination of the above.

construction, operation, and maintenance of a major utility facility, either as proposed or as modified by the commission, unless it finds and determines:

"(1) The basis of the need for the facility;

"(2) The nature of the probable environmental impact;

"(3) That the facility represents the minimum adverse environmental impact, considering the state of available technology and the nature and economics of the various alternatives, and other pertinent considerations;

"(4) In case of an electric transmission line, that such facility is consistent with regional plans for expansion of the electric power grid of the electric systems serving this state and interconnected utility systems; and that such facilities will serve the interests of electric system economy and reliability;

"(5) That the facility will comply with Chapters 3704, 3734, and 6111 of the Revised Code and all regulations and standards adopted thereunder;

"(6) That the facility will serve the public interest, convenience, and necessity."

Thus, the essence of appellee's challenge is that the home rule authority conferred by Section 4 of Article XVIII prevents the commission from reviewing the proposed construction with regard to the matters specified in R. C. 4906.10(A).

In the case of *Columbus* v. *Pub. Util. Comm.* (1979), 58 Ohio St. 2d 427, this court fully considered the relationship between Section 4 of Article XVIII and the police power. The court concluded, at page 432, that "* * * where the state enacts a statute promoting a valid and substantial interest in the public health, safety, morals or welfare; where the statute's impact upon municipal utilities is incidental and limited; and where the statute is not an attempt to restrict municipal power to operate utilities, the statute will be upheld. Conversely, * * * where the purpose of a statute is to control or restrict municipal utilities, the statute must yield. The majority of cases, however, * * * fall between these extremes."

One such case falling within these extremes is *Columbus* v. *Teater* (1978), 53 Ohio St. 2d 253. In *Teater* the Director of the Department of Natural Resources was authorized by statute to designate any watercourse within the state as a "scenic river area." The effect of such a designation was to prohibit channel modification of the watercourse unless approval was obtained from the Director of the Department of Natural Resources. The city of Columbus, which had expended funds to build a reservoir in an area subsequently designated a "scenic river area," challenged the statute requiring Director approval as an infringement upon Section 4 of Article XVIII. In upholding the statute, this court stated, at page 261:

"Ultimately, the judiciary must determine the facts in such controversies, balance the rights of the state against those of the municipality and endeavor to protect the respective interests of each. In such instances, the outcome of the constitutional argument involved will depend upon the facts and circumstances of the case."

In allowing the Director to develop a full record of the case in *Teater* for subsequent constitutional judicial review, the court was persuaded by the state's compelling interest in the conservation and preservation of the waterways in this state. Also significant was the extra-territorial impact of rechanneling a watercourse. See *Columbus v. Pub Util. Comm., supra.*

The facts of the present cause closely approximate those in *Teater*. In both cases the city of Columbus was required, by statute, to obtain agency approval before utility construction could be initiated. And in *Teater*, as here, the record showed that substantial environmental impact was anticipated from the proposed facility, extending beyond municipal boundaries. Thus, to the extent that *Teater* stands for the proposition that the General Assembly, pursuant to its police power, may subject a municipality to the jurisdiction of a legislatively created agency in matters of state-wide environmental concern, we agree with the holding of the Court of Appeals that *Teater* is dispositive herein.

The present cause differs from *Teater*, however, in that appellee herein has challenged each statutorily authorized factor used by the commission in assessing appropriate utility sites. These factors involve more than the environmental considerations raised in *Teater*. The question thus raised is whether appellants may, in light of clear constitutional conflict, evaluate testimony and make findings of fact on issues of municipal need, and the service of public interest, convenience and necessity, factors enumerated in R. C. 4906.10(A), with the environmental considerations discussed above. We concur with the Court of Appeals that to allow appellants to evaluate these matters would do violence to appellee's home rule authority.

In paragraph three of the syllabus in *Canton* v. *Whitman* (1975), 44 Ohio St. 2d 62, this court stated, as follows:

"Legislation enacted by the state pursuant to the police power, in relation to the public health, is valid as applied to the municipal operation of a public utility under Section 4 of Article XVIII of the Ohio Constitution, *where such legislation does not interfere with the ownership or operation of the utility.*" (Emphasis added.)

The italicized language is essentially derived from Section 4 of Article XVIII, and should be considered in conjunction with the test set forth in *Columbus* v. *Pub. Util. Comm., supra*.

To permit the Power Siting Commission to determine appellee's need for a utility, as well as the public service to be provided by, and convenience of, the facility constitutes a direct and substantial interference with the city's home rule authority under Section 4 of Article XVIII. Such determinations must fall within the exclusive province of municipalities if home rule is to retain vitality. Unlike in *Teater*, where the constitutionality of the statute in question could be resolved only by an application of the statute to a factually developed controversy, we find that the state could not, on balance, conceivably support such an intrusion into municipal functions. Accordingly, these

portions of the questioned statutes are facially unconstitutional.

In holding that R. C. 4906.01, 4906.03, 4906.04, 4906.06, 4906.10, 4906.13 and 4906.15 are unconstitutional on their face to the extent that these provisions authorize the Power Siting Commission to evaluate and determine a municipality's need for, and the public service and convenience of, a proposed utility, we leave for the commission the power to weigh their conclusions as to environmental impact against the municipality's determined needs and evaluations of public service and convenience. Insofar as regulation PSC-5-01(A) and other regulations promulgated pursuant to these provisions similarly infringe upon a municipality's home rule authority, so too must these regulations fall under Section 4 of Article XVIII.

Appellants have requested this court to issue a writ of mandamus ordering appellee to comply with R. C. Chapter 4906. In order for such a writ to be issued a relator must show:

"(1) that he enjoys a clear legal right to the relief for which he prays, (2) that respondent is under a clear legal duty to perform the act demanded by relator, and (3) that he has no plain and adequate remedy in the ordinary course of the law." *State, ex rel. Niles,* v. *Bernard* (1978), 53 Ohio St. 2d 31, at 33.

Aside from appellants' failure to establish clear legal rights and duties by a showing that appellee will continue to resist complying with R. C. Chapter 4906 following this adjudication, we will not issue the writ in cases where, as here, the state has failed to establish that its environmental interests cannot be adequately protected by appellee's compliance with R. C. Chapter 3704 (air pollution control), R. C. Chapter 3734 (solid waste disposal) and R. C. Chapter 6111 (water pollution control). To the extent that preliminary environmental inquiries of the Power Siting Commission are rendered valueless by subsequent adherence to standards and regulations adopted under these chapters, we will not exercise our discretion in

favor of unnecessary bureacratic duplication. Accordingly, the writ is denied.[3]

For these reasons, the judgment of the Court of Appeals is affirmed.

*Judgment affirmed.*

CELEBREZZE, C. J., HERBERT, W. BROWN, SWEENEY, LOCHER, and HOLMES, JJ., concur.

[3]This is not to be understood as a recommendation for appellee to ignore the statutes in issue. Disregard of these provisions will not obviate the inevitable confrontation of state environmental interests and municipal needs, a conflict which could have severe attendant costs if not resolved in early planning stages. Appellee must proceed at its own peril.