[This opinion has been published in *Ohio Official Reports* at 86 Ohio St.3d 43.]

BOARD OF COUNTY COMMISSIONERS OF OTTAWA COUNTY, APPELLANT, *v.*
VILLAGE OF MARBLEHEAD *ET AL.*, APPELLEES.

[Cite as *Ottawa Cty. Bd. Commrs. v. Marblehead*, 1999-Ohio-80.]

*Counties—Municipal corporations—County water supply systems—R.C. 6103.04*
*is constitutional—R.C. 6103.04 does not substantially interfere with a*
*municipality's power to own and operate a water supply system.*

(No. 98-1061—Submitted March 30, 1999—Decided July 7, 1999.)

APPEAL from the Court of Appeals for Ottawa County, No. OT-97- 031.

_____

{¶ 1} This case stems from a dispute between the Board of County
Commissioners of Ottawa County ("the Board") and the village of Marblehead
("Marblehead"), regarding which entity has the right to provide water service to
residents of county land that was recently annexed by Marblehead.

{¶ 2} The dispute began when the Board's plan for a county-wide water
supply system collided with Marblehead's plan to sell excess municipal water to
residents within the disputed area before it was annexed.  The Board sought to
enjoin Marblehead from expanding its water service beyond its municipal
boundaries.  Because the Board's power to regulate sewer districts and
Marblehead's authority to construct water service outside its municipal boundaries
were of equal dignity, the trial court applied a balancing test to weigh the interests
of the two entities and concluded that the Board had rights paramount to those of
Marblehead.  The Board obtained a declaratory judgment that Marblehead was
without authority to extend water service into the disputed area.  The court of
appeals affirmed based upon the facts of the case.

{¶ 3} Within days of the court of appeals' decision, the residents within the
disputed area filed their petition with the Board seeking annexation to Marblehead.

Before responding to the petition, the Board passed several resolutions: (1) a resolution of necessity declaring its intention to provide water service to the residents within the disputed area as well as to other areas of the county; (2) a resolution approving detailed plans, specifications, estimates of cost, water rates and charges, and assessment policy; and (3) a resolution determining to proceed with the construction of water system improvements within the county. Thereafter, the Board declined to approve the pending petition for annexation.

{¶ 4} County property owners objected to the Board's resolutions regarding the water supply system and filed an appeal to the probate court. The probate court found that the county water supply system was necessary for the public health, convenience, and welfare; that the boundaries of the assessment district were reasonable; and that the tentative assessments were, for the most part, reasonable. The court of appeals affirmed.

{¶ 5} Meanwhile, the residents who filed the petition for annexation sought review of the Board's resolution declining to approve the petition at the court of common pleas. The common pleas court determined that the Board had acted arbitrarily and unreasonably in denying the annexation petition and accordingly reversed the Board's refusal to accept the annexation petition.

{¶ 6} After the annexation petition was accepted, Marblehead prepared its own plans to provide water service to the residents within the disputed area. The Board sought, through an action for declaratory judgment, a temporary restraining order, and preliminary and permanent injunctive relief, to enjoin Marblehead from extending its water supply system into the disputed area and from engaging in any conduct that would interfere with the Board's ability to issue bonds for improvements within the disputed area. The Board asked the trial court to declare that R.C. 6103.04 gives it continuing authority within the disputed area to complete the water supply system that was already approved and adopted at the time of annexation. Marblehead counterclaimed. Marblehead sought to enjoin the Board

from constructing a water supply system within the disputed area without Marblehead's prior approval. Marblehead also sought a declaration that R.C. 6103.04 is unconstitutional because it conflicts with Section 4, Article XVIII of the Ohio Constitution, which Marblehead argued confers absolute authority on a municipality to construct and maintain a water supply system within its borders and to contract for water service for its residents.

{¶ 7} The trial court found that Marblehead has the exclusive right to provide water service within the disputed area, that R.C. 6103.01 *et seq.* is unconstitutional to the extent it interferes with Marblehead's exclusive right, and that the Board does not have the authority to construct a water supply system within Marblehead without Marblehead's approval. The court of appeals affirmed.

{¶ 8} The cause is now before this court upon the allowance of a discretionary appeal.

_____

*Benesch, Friedlander, Coplan & Aronoff, L.L.P., Orla E. Collier III, N. Victor Goodman* and *James F. DeLeone*, for appellant.

*Vorys, Sater, Seymour & Pease, L.L.P.,* and *Joseph A. Brunetto*, for appellees.

_____

**COOK, J.**

{¶ 9} Although Article XVIII of the Ohio Constitution grants municipalities the exclusive authority to provide their residents with utility services, a statute that limits the municipality's power is not unconstitutional if the purpose of the statute is an exercise of the state's police powers and is not a substantial infringement upon the municipality's authority. Because R.C. 6103.04 satisfies these requirements, it is not unconstitutional.

{¶ 10} The Ohio Constitution authorizes a municipality to provide water service to its residents to the exclusion of other providers. See *Lucas v. Lucas Local*

*School Dist.* (1982), 2 Ohio St.3d 13, 2 OBR 501, 442 N.E.2d 449.  Under Section 4, Article XVIII of the Ohio Constitution, "[a]ny municipality may acquire, construct, own, lease and operate within or without its corporate limits, any public utility the product or service of which is or is to be supplied to the municipality or its inhabitants, and may contract with others for any such product or service.  The acquisition of any such public utility may be by condemnation or otherwise, and a municipality may acquire thereby the use of, or full title to, the property and franchise of any company or person supplying to the municipality or its inhabitants the service or product of any such utility."  This constitutional provision is part of the municipal home-rule amendments that were proposed to remove "all legitimate questions as to the authority of municipalities to undertake and carry on essential municipal activities."  2 Proceedings and Debates of the Constitutional Convention of the State of Ohio (1913), at 1433.

{¶ 11} But, according to Marblehead, the statute at issue, R.C. 6103.04, permits a county sewer district to exercise jurisdiction for water-works purposes within the annexed territory of a municipality in violation of Section 4, Article XVIII of the Ohio Constitution.  R.C. 6103.04 provides statutory authority to enable an established county sewer district to complete an  existing county water service project when territory within the project area acquires municipality status through annexation during the pendency of the county project.  R.C. 6103.04 provides:

"Whenever any portion of a sewer district is * * * annexed to a municipal corporation, the area so * * * annexed shall remain under the jurisdiction of the board of county commissioners for water-works purposes until any water supply or water-works improvements for said area for which detailed plans have been prepared and the resolutions declaring the necessity thereof has [*sic*] been adopted by the board have been completed or until said board has abandoned such projects.  Such * * * annexation of any part of a district shall not interfere with or render illegal any issue of bonds or certificate of indebtedness made by the board * * * to

provide payment for the cost of construction and maintenance of any water improvements within such area, or with any assessments levied or to be levied upon the property within such area to provide for the payment of the cost of construction and maintenance."

{¶ 12} R.C. 6103.04 appears to contravene the constitutional authority of a municipality to provide public utility service. And that right is not generally subject to statutory restriction. *Lucas*, 2 Ohio St.3d 13, 2 OBR 501, 442 N.E.2d 449; *Columbus v. Pub. Util. Comm.* (1979), 58 Ohio St.2d 427, 12 O.O.3d 361, 390 N.E.2d 1201. But a statute enacted to promote the health, safety, and welfare of the public can override the municipality's authority if the statute does not substantially interfere with the municipality's constitutionally granted power. See, *e.g.*, *Columbus v. Teater* (1978), 53 Ohio St.2d 253, 260-261, 7 O.O.3d 410, 414, 374 N.E.2d 154, 159; *Canton v. Whitman* (1975), 44 Ohio St.2d 62, 68, 73 O.O.2d 285, 289, 337 N.E.2d 766, 771 ("An exercise of the police power necessarily occasions some interference with other rights, but that exercise is valid if it bears a real and substantial relationship to the public health, safety, morals or general welfare, and if it is not unreasonable or arbitrary.").

{¶ 13} In determining that R.C. 6103.04 is constitutional, we proceed from the fundamental precept that Ohio statutes are entitled to a strong presumption of constitutionality and must, in questionable cases, be construed to be constitutional if possible. *State ex rel. Jackman v. Court of Common Pleas of Cuyahoga Cty.* (1967), 9 Ohio St.2d 159, 161, 38 O.O.2d 404, 405-406, 224 N.E.2d 906, 908-909; *State v. Renalist, Inc.* (1978), 56 Ohio St.2d 276, 10 O.O.3d 408, 383 N.E.2d 892. In addition, we note that in *Columbus v. Pub. Util. Comm.*, 58 Ohio St.2d at 432, 12 O.O.3d at 364, 390 N.E.2d at 1204, this court explained that a spectrum of relations exists between the state and its municipalities:

"Where the state enacts a statute promoting a valid and substantial interest in the public health, safety, morals or welfare; where the statute's impact upon the

municipal utilities is incidental and limited; and where the statute is not an attempt to restrict municipal power to operate utilities, the statute will be upheld. Conversely, * * * where the purpose of a statute is to control or restrict municipal utilities, the statute must yield. The majority of cases, however, * * * fall between these extremes." In those cases, the court must " 'balance the rights of the state against those of the municipality and endeavor to protect the respective interests of each.' " *Id.* at 433, 12 O.O.3d at 364, 390 N.E.2d at 1204, quoting *Teater*, 53 Ohio St.2d at 261, 7 O.O.3d at 414, 374 N.E.2d at 160.

{¶ 14} R.C. 6103.04 falls between the extremes. Accordingly, we balance the interests of the Board against those of Marblehead. We recognize that the state has a substantial interest in ensuring that Ohio residents have a safe and adequate water supply. In fact, this court has held that a board's power to regulate sewer districts in the interest of public health and welfare constitutes a valid exercise of state police powers. *Delaware Cty. Bd. of Commrs. v. Columbus* (1986), 26 Ohio St.3d 179, 180-181, 26 OBR 154, 155, 497 N.E.2d 1112, 1113-1114. R.C. 6103.04 ensures stability of financing for county water service projects even in the face of changing governmental entities.

{¶ 15} Having concluded that R.C. 6103.04 is a valid exercise of state police powers, we next review whether the legislative intent of the statute was to generally restrict a municipality's authority to provide utility service to its residents. By the expressly limited scope, we discern that the General Assembly intended R.C. 6103.04 to permit completion of pending county water service projects through protection of financing arrangements that would otherwise be affected by intervening annexations.

{¶ 16} The challenged statute's impact on a municipality's authority to operate utilities is limited. R.C. 6103.04 restricts the Board's statutory jurisdiction within the municipality to that period of time when "any water supply or water-works improvements for said area * * * have been completed or until said board

has abandoned such projects." And this limited jurisdiction is only triggered by an intervening set of circumstances that warrant such practical considerations; considerations generally encompassed within the concept of police powers, including preservation of public resources.

{¶ 17} R.C. 6103.04 does not substantially interfere with a municipality's power to own and operate a water supply system.

{¶ 18} For all of these reasons, we conclude that Marblehead has not overcome the strong presumption that R.C. 6103.04 is constitutional. R.C. 6103.04 only permissibly infringes on a municipality's authority. It is an exercise of police powers and does not substantially infringe upon a municipality's power to operate utilities.

{¶ 19} Because we reverse the court of appeals' decision regarding the constitutionality of R.C. 6103.04, we need not reach its decision regarding R.C. 6103.26. The court of appeals premised its R.C. 6103.26 discussion on the unconstitutionality of R.C. 6103.04.

{¶ 20} Accordingly, the judgment of the court of appeals is reversed.

*Judgment reversed.*

YOUNG, PFEIFER and LUNDBERG STRATTON, JJ., concur.

DOUGLAS, Acting C.J., SPELLACY and F.E. SWEENEY, JJ., dissent.

FREDERICK N. YOUNG, J., of the Second Appellate District, sitting for MOYER, C.J.

LEO M. SPELLACY, J., of the Eighth Appellate District, sitting for RESNICK, J.

————————

**DOUGLAS, ACTING C.J., dissenting.**

{¶ 21} I dissent from the judgment and opinion of the majority. The majority, in rapid fashion, has abridged the express grant of power provided to municipalities in this state by Section 4, Article XVIII of the Ohio Constitution.

Specifically, the majority holds that "[a]lthough Article XVIII of the Ohio Constitution grants municipalities the *exclusive* authority *to provide* their residents with utility services, a statute that limits the municipality's power is not unconstitutional if the purpose of the statute is an exercise of the state's police powers and is not a substantial infringement upon the municipality's authority." (Emphasis added.) To that end, the majority holds that "[b]ecause R.C. 6103.04 satisfies these requirements, it is not unconstitutional."

{¶ 22} In reaching these conclusions, the majority relies primarily on *Lucas v. Lucas Local School Dist*. (1982), 2 Ohio St.3d 13, 2 OBR 501, 442 N.E.2d 449; *Columbus v. Pub. Util. Comm*. (1979), 58 Ohio St.2d 427, 12 O.O.3d 361, 390 N.E.2d 1201; *Columbus v. Teater* (1978), 53 Ohio St.2d 253, 7 O.O.3d 410, 374 N.E.2d 154; and *Canton v. Whitman* (1975), 44 Ohio St.2d 62, 73 O.O.2d 285, 337 N.E.2d 766. However, these cases, along with the "clear, specific and self-executing" powers enumerated in Section 4, Article XVIII, see *In re Complaint of Residents of Struthers* (1989), 45 Ohio St.3d 227, 543 N.E.2d 794, paragraph one of the syllabus, do not support the conclusions reached by the majority. Accordingly, because the majority has failed to properly interpret and apply the law in this area, and because the majority has effectively renounced the clear grant of constitutional authority provided to municipalities in Section 4, Article XVIII, I must dissent. Indeed, today's short-sighted holding will only further exacerbate the problems associated with the establishment, servicing, and control of utility services within land annexed by a municipality.

{¶ 23} Section 4, Article XVIII provides:

"*Any municipality may acquire, construct, own, lease and operate within or without its corporate limits, any public utility the product or service of which is or is to be supplied to the municipality or its inhabitants*, and may contract with others for any such product or service. The acquisition of any such public utility may be by condemnation or otherwise, and a municipality may acquire thereby the use of,

or full title to, the property and franchise of any company or person supplying to the municipality or its inhabitants the service or product of any such utility." (Emphasis added.)

{¶ 24} The language of Section 4, Article XVIII is unmistakable. Until today, the clear language of Section 4 meant that a municipality could, without restriction, "acquire, construct, own, lease and operate within or without its corporate limits, any public utility the product or service of which is or is to be supplied to the municipality or its inhabitants." However, these plain words, as approved by the sovereign people of this state in 1912, apparently no longer mean what they say.

{¶ 25} This court has held consistently that rights afforded by Section 4, Article XVIII are not subject to statutory restriction or to commission review or control. See, *e.g.*, *Cleveland Elec. Illum. Co. v. Pub. Util. Comm.* (1996), 76 Ohio St.3d 521, 530, 668 N.E.2d 889, 895-896 (Moyer, C.J., dissenting), citing *Link v. Pub. Util. Comm.* (1921), 102 Ohio St. 336, 131 N.E. 796, paragraph two of the syllabus; *In re Complaint of Residents of Struthers*, *supra*, paragraphs one and three of the syllabus; *Lucas*, *supra; Columbus v. Pub. Util. Comm.*, *supra;* and *Columbus v. Ohio Power Siting Comm.* (1979), 58 Ohio St.2d 435, 12 O.O.3d 365, 390 N.E.2d 1208. See, also, *Pfau v. Cincinnati* (1943), 142 Ohio St. 101, 26 O.O. 284, 50 N.E.2d 172; and *Swank v. Shiloh* (1957), 166 Ohio St. 415, 2 O.O.2d 401, 143 N.E.2d 586, paragraph one of the syllabus ("The power to acquire, construct, own or lease and to operate a utility, the product of which is to be supplied to a municipality or its inhabitants, is derived from Section 4, Article XVIII of the Constitution, and the General Assembly is without authority to impose restrictions or limitations upon that power.").

{¶ 26} Specifically, in *Lucas,* 2 Ohio St.3d at 14, 2 OBR at 502, 442 N.E.2d at 450, we stated that Section 4, Article XVIII "is clearly a grant of power and not a limitation of authority," and that "the obvious purpose of this section is to provide

the municipalities with the comprehensive authority to deal with public utilities." *Id*., 2 Ohio St.3d at 14, 2 OBR at 502, 442 N.E.2d at 450, fn. 1. Additionally, we also noted that "the first cases interpreting this provision described the municipal powers over utilities as 'plenary,'" and that "[t]he Home Rule Amendments, Section 4 included, are examples of the people taking a governmental function from one body and placing it under the auspices of another." *Id*., 2 Ohio St.3d at 14, 2 OBR at 502, 442 N.E.2d at 450. Hence, "municipalities were awarded jurisdiction over public utilities which formerly rested in the domain of the General Assembly." *Id*. Therefore, we expressly held in *Lucas*, at paragraph one of the syllabus, that "[c]ontracting for public utility services is *exclusively* a municipal function under Section 4, Article XVIII, of the Ohio Constitution." (Emphasis added.)

**{¶ 27}** Citing *Lucas*, the majority states that "[t]he Ohio Constitution authorizes a municipality *to provide* water service to its residents to the *exclusion* of other providers." (Emphasis added.) "Exclusion" is defined as "[d]enial of entry or admittance." Black's Law Dictionary (6 Ed.Rev.1990) 563. Moreover, "exclusive" is defined as "[a]ppertaining to the subject alone, not including, admitting, or pertaining to any others." *Id*. at 564. Thus, it would seem to follow that, since Marblehead has the absolute authority "to provide" water services to its inhabitants to the "exclusion" of all other entities, any restriction or limitation placed on Marblehead in this regard runs afoul of Section 4, Article XVIII.

**{¶ 28}** R.C. 6103.04 provides:

"Whenever any portion of a sewer district is incorporated as a municipal corporation or annexed to a municipal corporation, the area so incorporated or annexed shall remain under the jurisdiction of the board of county commissioners for water-works purposes until any water supply or water-works improvements for said area for which detailed plans have been prepared and the resolutions declaring the necessity thereof has [*sic*] been adopted by the board have been completed or until said board has abandoned such projects. Such incorporation or annexation of

any part of a district shall not interfere with or render illegal any issue of bonds or certificate of indebtedness made by the board in accordance with sections 6103.02 to 6103.30, inclusive, of the Revised Code, to provide payment for the cost of construction and maintenance of any water improvements within such area, or with any assessments levied or to be levied upon the property within such area to provide for the payment of the cost of construction and maintenance."

{¶ 29} R.C. 6103.04 sets forth that whenever any portion of a county sewer district is annexed to a municipality, the area annexed shall remain under the jurisdiction of the board of county commissioners for waterworks purposes until the projects, for which detailed plans have been prepared and resolutions declaring the necessity thereof have been adopted, have been completed or abandoned by the board. According to the majority, Marblehead can be enjoined from establishing a water supply system for its residents because R.C. 6103.04 is a legitimate exercise of the state's police powers and because the statute does not "substantially interfere" with, and "only permissibly infringes" upon, the exclusive authority afforded to municipalities in Section 4, Article XVIII. In reaching these conclusions, and, specifically, the conclusion that the board's rights under R.C. 6103.04 are paramount to the explicit constitutional power afforded to Marblehead under Section 4, Article XVIII, the majority relies upon *Teater* and *Whitman*, *supra*.

{¶ 30} Without question, certain legislative acts "of statewide concern," which do not impair constitutional grants of authority contained in Section 4, Article XVIII, are valid. *Lucas*, 2 Ohio St.3d at 15, 2 OBR at 503, 442 N.E.2d at 451. Clearly, *Teater* and *Whitman* involved such matters. However, *Teater* and *Whitman* do not support the conclusions reached by the majority and both cases are easily distinguishable from the case at bar.

{¶ 31} In *Whitman*, we held that the state may require a municipality to fluoridate an *already existing* municipally owned and operated water supply system and that the statute in question, which required a certain level of fluoridation, was

a valid exercise of the state police power. Specifically, we determined that the statute requiring fluoridation of water was permissible because the regulation was a matter of statewide concern (prevention and control of dental caries), and, more importantly, because the regulation did not limit the ownership or operation of a municipal waterworks. *Id*., 44 Ohio St.2d at 68, 73 O.O.2d at 289, 337 N.E.2d at 771 ("The ownership and operation of a municipal waterworks is not limited by a state requirement that fluorides be added to the water in the interest of the public health  * * *. The state, in fact, supplies the equipment necessary to add the fluorides.  * * * Fluoridation is plainly a matter involving the public health; there is no indication that it unreasonably restricts, limits, or otherwise interferes with the operation of a municipal utility.").  However, the case before us is clearly different. The majority has extinguished, indefinitely, Marblehead's exclusive right *to establish and provide* water services to its residents.  Moreover, the operation and ownership of water services within the area annexed by Marblehead is not a matter of statewide concern.  Thus, the majority misapprehends *Whitman* by using *Whitman* to elevate, herein, the purely local interests of appellant board over the express constitutional authority of Marblehead to own and operate a public utility within its municipal limits.

{¶ 32} The majority attempts to soften its holding by asserting that R.C. 6103.04 is only a "limited" restriction.  The majority states that R.C. 6103.04 "restricts the Board's statutory jurisdiction within the municipality to *that period of time* when 'any water supply or water-works improvements for said area  * * * have been completed or until said board has abandoned such projects.' " (Emphasis added.)  "Period of time" is, of course, not defined by the majority.  In any event, *any* limitation on a municipality's authority *to provide* water services to its residents violates Section 4, Article XVIII.  Indeed, this court's holding in *Whitman* was never intended to "represent a retreat from the strong home rule principles" that the General Assembly may not limit the power of a municipality *to own or operate* a

public utility without violating Section 4, Article XVIII. See *Columbus v. Pub. Util. Comm.*, 58 Ohio St.2d at 432, 12 O.O.3d at 364, 390 N.E.2d at 1204, relying on *McCann v. Defiance* (1958), 167 Ohio St. 313, 4 O.O.2d 369, 148 N.E.2d 221. Accordingly, *Whitman* does not support the position of the majority, and any reliance by the majority on *Whitman* in reaching its holding is simply wrong.

{¶ 33} Likewise, *Teater* also lends no support to the holding rendered by the majority. In *Teater*, the city of Columbus instituted a program for the construction, operation, and maintenance of a new water supply reservoir *located outside* its corporate limits on Big Darby Creek. The location of the reservoir was also to be within the area proposed by the Director of Natural Resources as a "scenic river area." The director's authority to designate the area as a protected "scenic area" was in accordance with a state statute adopted pursuant to Section 36, Article II of the Ohio Constitution. The effect of such a designation was to prohibit channel modification of the watercourse. The city challenged the constitutionality of the statute, urging, among other things, that it violated Section 4, Article XVIII.

{¶ 34} In finding the statute constitutional, this court recognized that the area in question was *located outside* the city's corporate limits and that the statute at issue concerned matters of statewide import, namely, the conservation and preservation of natural resources. Specifically, in *Teater,* 53 Ohio St.2d at 261, 7 O.O.3d at 414, 374 N.E.2d at 159-160, the court held:

"The authority enjoyed by municipalities under Article XVIII cannot be extinguished by the General Assembly. Nevertheless, under appropriate facts, the power possessed by the General Assembly under Section 36 of Article II can override the interest of a city in constructing water supply impoundments *located outside its corporate limits*. Ultimately, the judiciary must determine the facts in such controversies, balance the rights of the state against those of the municipality and endeavor to protect the respective interests of each. In such instances, the

outcome of the constitutional argument involved will depend upon the facts and circumstances of the case." (Emphasis added.)

{¶ 35} Clearly, *Teater* does not support the holding of the majority. In *Teater*, the court indicated that state police powers are not presumptively paramount to home rule authority conferred upon municipalities by Article XVIII. Rather, state police powers and home rule powers are "equal in dignity," see *Teater,* 53 Ohio St.2d at 257, 7 O.O.3d at 412, 374 N.E.2d at 157, only if the statute is of statewide concern, and the statute and the application of the home rule provision establishing a public utility conflict *outside* the municipal limits. The significant "extra-territorial effect," which would have resulted from the city's proposed water supply reservoir, was material to the holding in *Teater*. See *Columbus v. Pub. Util. Comm.*, 58 Ohio St.2d at 433, 12 O.O.3d at 364, 390 N.E.2d at 1205; and *Columbus v. Ohio Power Siting Comm.*, 58 Ohio St.2d at 439, 12 O.O.3d at 368, 390 N.E.2d at 1211. Thus, unlike the situation in *Teater*, here Marblehead is not attempting to establish a water service system *outside* its boundaries. In this regard, the equal dignity language and balancing test derived from *Teater* are not applicable to the present case.

{¶ 36} Until today, this court has consistently protected the rights of a municipality to own and operate a public utility for the purpose of supplying the service or product to its residents. See, *e.g.*, *McCann* (statute that requires municipalities to furnish water to noninhabitants and also limits the price which the municipality may charge for such water is unconstitutional and is void); *Columbus v. Pub. Util. Comm.* (statute that requires municipally owned and operated electric light companies to offer their customers specified billing options violates Section 4, Article XVIII); and *Columbus v. Ohio Power Siting Comm.* (statute that authorizes a commission to evaluate and determine a municipality's need for, and the public service and convenience of, a proposed municipal utility is unconstitutional). Importantly, " '[l]egislation enacted by the state pursuant to the

police power, in relation to the public health, is valid as applied to the municipal operation of a public utility under Section 4, Article XVIII of the Ohio Constitution, *where such legislation does not interfere with the ownership or operation of the utility*.' " (Emphasis sic.) *Columbus v. Ohio Power Siting Comm.*, 58 Ohio St.2d at 440, 12 O.O.3d at 368-369, 390 N.E.2d at 1212, quoting *Whitman*, paragraph three of the syllabus.

**{¶ 37}** The law in Ohio is clear. Marblehead has the exclusive right to provide water service to its residents. The majority's decision, reversing the judgment of the court of appeals and enjoining Marblehead from extending its water supply system into the annexed area, is just plain wrong. Accordingly, I must dissent.

SPELLACY and F.E. SWEENEY, JJ., concur in the foregoing dissenting opinion.

_____