This cause was heard upon the record in the trial court. Each error assigned has been reviewed and the following disposition is made:
Appellant City of Hudson (Hudson) has appealed from a judgment of the Summit County Common Pleas Court that denied Hudson's complaint for declaratory and injunctive relief. This Court affirms in part and reverses in part.
 I.
From 1979 to 1993, twenty-six residential subdivisions were constructed in what was then known as Hudson Township. Within these subdivisions, developers constructed water lines (the water system) for residential service. Pursuant to contracts between Appellee Summit County (the County) and the developers, the water system was constructed at the developer's cost and then conveyed to the County in trust for the public good.[1] In exchange, the County allowed the developers to connect the water system to the County's existing water service facilities. Ultimately, the developers passed the cost of the water system on to the individual lot purchasers.
On January 1, 1994, the Village of Hudson and Hudson Township merged to create Hudson. Five years later, on January 22, 1999, Hudson filed a complaint in the Summit County Common Pleas Court, seeking declaratory judgment and injunctive relief against the County and the City of Akron (Akron). In its complaint, Hudson sought: 1) a declaration that the "roads and water line easements located in Hudson Township have by reason of the merger of the [Village] of Hudson and Hudson Township passed by operation of law to [Hudson] to be held in trust for the benefit of the public;" 2) a declaration that Hudson "has control and title to be held in trust for the benefit of the public to the roads and water line easements located in Hudson Township prior to its merger with the Village of Hudson on January 1, 1994;" and, 3) "an injunction restraining [the County] and [Akron], their respective officers, agents and employees, from interfering with [Hudson] in governing, managing and controlling the water line easements located within its boundaries[.]"[2]
Thereafter, during April of 1999, the County issued a request for proposals for the sale of all of its water service facilities, including the water system at issue in this case.[3] Akron expressed an interest in purchasing the water system, while Hudson did not respond to the request. Subsequent to the County's request, Hudson moved for an emergency restraining order and a preliminary injunction, seeking to prevent the sale. On May 14, 1999, the trial court issued an order wherein the parties stipulated to submit briefs on the following issue:
 Whether by reason of the merger of Hudson Village and Hudson Township, the road and water line easements formerly located in Hudson Township passed by operation of law to [Hudson] to be held in trust for the benefit of the public.
 In its brief, Hudson argued that its exercise of the utility power under the Ohio Constitution is superior to the County's exercise of police power, and upon Hudson's incorporation, the County lost jurisdiction of the water system. In response, the County and Akron argued that the County's interest does not yield to Hudson's utility power by operation of law or without just compensation and that, pursuant to R.C. 6103 et seq., the County also has the authority to maintain, operate and even sell the water system.
On June 13, 2000, the magistrate determined that the water system did not pass to Hudson by operation of law. The magistrate further stated that the water system belonged to the County and that Hudson was not entitled to an order prohibiting the County from selling the water system. Hudson filed timely objections to the magistrate's decision. The trial court overruled Hudson's objections and, ultimately, issued an order denying Hudson's complaint for declaratory judgment and injunctive relief. Hudson timely appealed the order, asserting seven assignments of error. This Court has consolidated Hudson's arguments for ease of discussion.[4]
 II.
This case presents two issues of first impression: (1) whether a water system, including pipes, facilities and each easement pertinent thereto, held in trust for the public good by a county remains in such trust when the township in which that system is located merges with a village and is incorporated into a city; and, (2) whether a county, holding in trust for the public good a water system that is located within one municipality, may contract to sell the same water system to another municipality. This Court holds that while the water system remains under the county's control upon the city's incorporation the county may only sell that water system to the municipality in which it is located.
 A.
The inquiry begins with the Ohio Constitution. Pursuant to Section 4, Article XVIII of the Ohio Constitution, a municipality has the power to provide water services to its residents. Ottawa Cty. Bd. of Commrs. v.Marblehead (1999), 86 Ohio St.3d 43, 45.
 Any municipality may acquire, construct, own, lease and operate within or without its corporate limits, any public utility the product or service of which is or is to be supplied to the municipality or its inhabitants, and may contract with others for any such product or service. The acquisition of any such public utility may be by condemnation or otherwise, and a municipality may acquire thereby the use of, or full title to, the property and franchise of any company or person supplying to the municipality or its inhabitants the service or product of any such utility.
 (Emphasis added.) Section 4, Article XVIII, Ohio Constitution. The Ohio Supreme Court once observed that this constitutional provision was "primarily intended to confer the power of eminent domain on municipalities for the purpose of acquiring existing public utilities." Blue Ash v. Cincinnati (1962), 173 Ohio St. 345, 352. More recently, the court indicated that under this provision, a municipality may exercise eminent domain over public water service facilities owned by another political subdivision so long as the exercise does not destroy the utility, economically or otherwise. Northwood v. Wood Cty. Regional Water Sewer Dist. (1999), 86 Ohio St.3d 92, 94. The municipality's power to act is not mandatory; rather, it is elective in nature. Thus, a municipality does not have to acquire, own, maintain, lease or operate public water service facilities, but it may if it so chooses.
R.C. 6103.22, which also finds application in this case, provides, in pertinent part:
 A completed water supply or water-works system * * * located within any municipal corporation or within any area that may be incorporated as a municipal corporation or annexed to an existing municipal corporation, or which provides water for such an area, by mutual agreement between the board of county commissioners and such municipal corporation may be conveyed to such municipal corporation, which shall thereafter maintain and operate the water supply or water-works.
R.C. 6103.22.[5]
In the present case the record reveals that the County maintained and operated the water system prior to Hudson's incorporation. After the date of Hudson's incorporation, January 1, 1994, the County continued to maintain and operate the water system. Hudson did not raise an objection until it commenced this lawsuit on January 22, 1999. Hudson has urged this Court to declare that it automatically acquired the water system upon its incorporation; however, Hudson's arguments contradict the Ohio Constitution, R.C. 6103 et seq. and Ohio case law.
Pursuant to Section 4, Article XVIII of the Ohio Constitution, a municipality has the power to acquire, by eminent domain or otherwise, own and operate a public utility.[6] See Northwood, 86 Ohio St.3d at syllabus. Under R.C. 6103.22, a municipality may acquire existing water service facilities within it boundaries by mutual agreement with the county. But contrary to Hudson's arguments, nowhere is there language in the Ohio Constitution or Revised Code that suggests a newly incorporated municipality acquires existing water service facilities by operation of law.[7] In other words, upon incorporation, a municipality, having gained corporate status, may acquire the water service facilities by an affirmative act, e.g. eminent domain or sale, but such a conveyance is never by the operation of law. Thus, Hudson could constitutionally proceed by eminent domain to acquire the water system.[8] In the alternative, Hudson is constitutionally free to "otherwise" obtain the water service facilities by reaching an agreement with the County to convey the water system to Hudson, as set forth in R.C. 6103.22. To date, Hudson has not elected either alternative. Hudson cannot ignore constitutional and statutory procedures and unilaterally confiscate the water system. In the end, this Court holds that, under the facts of this case, the County still holds the water system in trust for the public good.
 B.
Having determined that the water system, held in trust for the public good by a county remains in such trust when the township in which that system is located merges with a village and is incorporated into a city, this Court now turns to the second issue presented: whether the County may contract to sell the water system to any other municipality, e.g. Akron, besides Hudson, pursuant to R.C. 6103 et seq. Hudson has argued that R.C. 6103 et seq. does not authorize a county to sell a public utility located within a municipality to an extra-territorial, third party, whether public or private. Specifically, Hudson has claimed that Ohio law permits the County, once it chooses to sell the water system, to bargain only with Hudson. In response, the County and Akron have claimed that if one reads R.C. 6103.21 and 6103.22 in pari materia, it becomes clear that a county may negotiate a sale contract not only with any municipality, but with any other county.
This Court agrees that R.C. 6103.21 and 6103.22 are interrelated. R.C. 6103.21[9] provides:
 At any time after the formation of any sewer district, the board of county commissioners may enter into a contract upon such terms and for such period of time as are mutually agreed upon with any municipal corporation or any other county to prepare necessary plans and estimates of cost and to construct any water supply improvement to be used jointly by the contracting parties, and to provide for the furnishing of water and for the joint use by such contracting parties of such water supply improvement or the joint use of any suitable existing water supply or water mains belonging to either of such parties.
 This section contemplates that entities may join together to either acquire or construct water service facilities so that the entities involved may jointly use such facilities. R.C. 6103.22[10] then provides as follows:
 All contracts under section 6103.21 of the Revised Code shall provide for payment to the county or municipal corporation owning, constructing, or agreeing to construct the water supply improvement to be jointly used of the amount agreed upon as the other party's share of the cost of the water supply improvement. The contract also shall provide for payment to the county or municipal corporation owning or constructing and maintaining the improvement of the amount agreed upon for the other party's share of the cost of operating and maintaining the water supply improvement, including the cost of water, or in lieu of all other payments an agreed price per unit for water furnished. A county or municipal corporation owning, constructing, or agreeing to construct a water supply improvement and permitting the use of it by another county or municipal corporation shall retain full control and management of the construction, maintenance, repair, and operation of the improvement, except when conveyed to a municipal corporation as provided in this section.
 A completed water supply or water-works system, as defined in sections 6103.01 and 6103.02 of the Revised Code, for the use of any sewer district, constructed under this chapter, and any part thereof, located within any municipal corporation or within any area that may be incorporated as a municipal corporation or annexed to an existing municipal corporation, or that provides water for such an area, by mutual agreement between the board of county commissioners and the municipal corporation may be conveyed to the municipal corporation, which shall thereafter maintain and operate the water supply or water-works. The board may retain the right to joint use of the water supply or water-works for the benefit of the district. The validity of any assessment that has been levied or may be levied thereafter to provide means for the payment of the cost of the construction or maintenance of the water supply or water-works or any part of it shall not be affected by the conveyance.
 (Emphasis added.) R.C. 6103.22 operates in two parts. The first portion addresses the contractual requirements and payment responsibilities that must be delegated between the parties when they agree to construct, improve and/or jointly operate water service facilities. It further sets forth the parties' rights to control this system.
The second portion of R.C. 6103.22 relates to the transfer of completed water service facilities. This section must be viewed in light of the first paragraph of the statute. When so read, the import of the phrase, "the municipal corporation," stating to whom the water service facilities can be transferred, becomes clear: a county may only transfer ownership to the municipality serviced by the water service facilities. R.C.6103.22. (Emphasis added.)
Applying this reading to the facts of the instant case, this Court concludes that the County may only transfer the water system to Hudson. Therefore, the trial court erred in denying Hudson's complaint for declaratory and injunctive relief, prohibiting the County from selling the water system to Akron. Hudson's arguments to this end are well taken.
 III.
The judgment of the trial court is affirmed in part and reversed in part. While the County continues to hold the water system in trust, it is hereby enjoined from selling that system to any municipality other than Hudson.
The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this Court, directing the County of Summit, Court of Common Pleas, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E).
Costs taxed to equally to both parties.
Exceptions.
 ______________________________________ WILLIAM R. BAIRD
BAIRD, P.J., SLABY, J. CONCURS.
[1] A portion of the water system in question was once owned by the City of Akron. However, during 1996, the City of Akron sold those facilities to the County. Hudson lodged no objection at that time.
[2] This Court would point out that Hudson's complaint sought an express declaration as to: (1) roadways; and, (2) water line easements. The language employed has two implications. First, the parties, at neither the trial level nor in their initial merit briefs on appeal, advanced any arguments as to the ownership of roadways located in Hudson. It was stipulated that, effective January 1, 1994, Hudson assumed the obligation of maintaining them. Because no dispute arose regarding the roadways' ownership, the trial court rendered no declaration as to Hudson's rights in that regard, and the issue is not before this Court.
Second, the parties have raised arguments pertaining to the entire water system in Hudson. This gives rise to the other dilemma resulting from the language in Hudson's complaint. Essentially, Hudson only sought a declaration as to easements, not the entire water system. Nevertheless, the parties submitted evidence and arguments and the trial court entered judgment to that end. Thus, the trial court's judgment regarding Hudson's rights to the entire water system is properly before this Court. See Civ.R. 15(B). See, also, State ex rel. Celebrezze v.Christman (Feb. 20, 1991), Medina App. No. 1920-M, unreported, at 7 ("Cases are to be decided on the issues actually litigated[.]"), citingState ex rel. Evans v. Bainbridge Twp. Trustees (1983), 5 Ohio St.3d 41,44.
[3] The bidding process for this sale was postponed until the outcome of this case.
[4] Hudson's assignments of error read as follows:
Assignment of Error Number One
The trial court erred in failing to recognize that where a county's exercise of the police power and a municipality's exercise of its utility power conflict regarding provision of water services exclusively to inhabitants of the municipality, the municipality has superior rights.
 Assignment of Error Number Three
The trial court erred in failing to recognize that Summit County's authority to own or operate a water supply system within the former Hudson Township is defined and limited by [R.C. 6103].
 Assignment of Error Number Four
The trial court erred by ruling that upon incorporation of township territory containing a water supply system held by the county for the benefit of township residents, the county does not lose jurisdiction of the water system in favor of the municipality in which the water system is exclusively located and providing service.
 Assignment of Error Number Five
The trial court erred by ruling that a county does not lose jurisdiction of a water system in favor of the municipality in which the water system is exclusively located and providing service when the county decides to put the water system up for sale.
 Assignment of Error Number Six
The trial court erred in ruling that a county that took ownership of a water supply system for the benefit of township residents in exchange for operating and maintaining the system may sell the system to another municipality for inclusion in its extra-territorial water service over the objections of the municipality in which the water system is exclusively located and providing service.
 Assignment of Error Number Seven
The trial court erred by interpreting Section 4, Article XVIII of the Ohio Constitution as limiting municipalities to use of eminent domain as the only means of "acquiring" utility systems.
Because the disposition of these assignments of error renders his second assignment of error moot, this Court declines to address it. App.R. 12(A)(1)(c).
[5] The language quoted is from the version of R.C. 6103.22 in effect on January 1, 1994, the date of Hudson's incorporation. The General Assembly amended this statute, effective November 26, 1997. The 1997 version is applied infra in this Court's discussion of the second issue presented herein. The General Assembly amended R.C. 6103.22 once more, effective March 12, 2001. Clearly, that amendment is inapplicable to the facts of this case.
[6] Pursuant to R.C. 6103.02, the County also has authority to own and maintain public utilities. Hudson has asserted that its powers, pursuant to the Ohio Constitution, conflict with the County's statutory power; This Court disagrees. No such conflict exists under the circumstances in this case. Hudson remains free to acquire or lease the water system, or even construct an entirely new system if it so desires.
[7] Hudson has pointed out that while a municipality's constitutional power to provide a public utility service is not generally restricted, a statute enacted to promote the health, safety, and welfare of the public can override the municipality's authority if the statute does not substantially interfere with the municipality's constitutionally granted power. See Marblehead, 86 Ohio St.3d at 45-46. In this vein, Hudson has cited R.C. 6103.04, which at the time of Hudson's incorporation, allowed a county to exercise jurisdiction over an incomplete water system within an area annexed or incorporated to the municipality under limited circumstances.
 [T]he area so incorporated or annexed shall remain under the jurisdiction of the board of county commissioners for water-works purposes until any water supply or water-works improvements for said area for which detailed plans have been prepared and the resolutions declaring the necessity thereof has been adopted by the board have been completed or until said board has abandoned such projects.
 R.C. 6103.04. However, R.C. 6103.04 and Marblehead
apply only to uncompleted water facilities, not a completed system like the one in this case. This Court would also add that effective March 12, 2001, R.C. 6103.04 was amended to clarify situations such as the one at bar. Unfortunately, amended R.C. 6103.04
has no bearing in this matter.
[8] Hudson has asserted that the trial court erred in finding that eminent domain was the only means for Hudson to acquire the water facility. In reviewing the record, this Court notes that the trial court's decision referenced both eminent domain and contracting with the County for the conveyance of the water facility as possible alternatives for Hudson to acquire the water facility. Accordingly, Hudson's argument is not well taken.
[9] R.C. 6103.21 was also amended effective March 12, 2001. That amendment is inapplicable here.
[10] The language set forth here is the version effective from November 26, 1997 to March 12, 2001.